**UNITED STATES ex rel. PATTON v. TOD, Commissioner of Immigration of the Port of New York.**

(District Court, S. D. New York. July 6, 1923.)

I. Aliens ⬤⟿53—Entry in violation of law gives no right to remain; "dwelling therein."

A minor alien brought into the United States in violation of law cannot acquire the status of one "dwelling therein," within the meaning of Rev. St. § 2172 (Comp. St. § 4367), providing that minors, if dwelling in the United States, shall become citizens by the naturalization of their parents, and such child is subject to be deported.

2. Citizens ⬤⟿9—Minor children of alien have status of citizens through parents.

Rev. St. § 2172 (Comp. St. § 4367), in so far as it applies to children of aliens born outside the United States, was superseded by Act March 2, 1907, § 5 (Comp. St. § 3962), providing that such children shall be deemed citizens of the United States by virtue of the parent during their minority, provided "that the citizenship of such minor child shall begin at the time such minor child begins to reside permanently in the United States."

3. Citizens ⬤⟿9—Child of naturalized alien held an alien subject to deportation; "permanent residence."

The minor child of an alien immigrant was certified by the medical examiners to be an imbecile and excluded, but the vessel on which she was being taken back to Russia returned because of war conditions and she was permitted to land under bond awaiting future deportation. The bond was renewed from time to time, and in the meantime her father was naturalized. *Held,* that she had not acquired a "permanent residence" in the United States within the meaning of Act March 2, 1907, § 5 (Comp. St. § 3962), but notwithstanding her father's naturalization remained an alien subject to deportation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Residence.]

4. Aliens ⬤⟿54—Order of exclusion based on medical certificate is final.

A decision of the Board of Special Inquiry excluding an alien, based on a certificate of the medical examining officers that the alien is an imbecile, is final and not subject to review by the Secretary of Labor.

5. Aliens ⬤⟿54—Limitation of time for deportation ceases to run on issuance of warrant.

Under Immigration Act, § 19 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj), limiting the time within which aliens may be deported to five years after entry, the limitation begins to run only when the alien is passed by the immigration authorities, and ceases to run on the issuance of a warrant for arrest and deportation.

Habeas corpus, on relation of Hyman Patton, next friend and father of Pola Patton, an infant, against Robert E. Tod, Commissioner of Immigration of the Port of New York. Writ denied.

Gilbert & Gilbert, of New York City, for petitioner.

William Hayward, U. S. Atty., of New York City (James C. Thomas, of New York City, of counsel), for respondent.

WINSLOW, District Judge. This matter comes before the court on a writ of habeas corpus issued out of this court on the petition of Hyman Patton, father of the infant, Pola Patton, who is now being held by the Immigration Commissioner, at Ellis Island, for deportation.

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

This is a case of a feeble-minded alien who first applied for admission to the United States, together with her mother, brother, and sister, arriving on the steamship Batavia, July 6, 1914. Upon medical examination, she was certified to be an imbecile; the medical certificate reading as follows:

"This is to certify that the above-described person (Pesse) has this day been examined and is found to be an imbecile.
                    "[Signed] Vogel, Bebb & Treadway, Surgeons."

A further medical certificate appears in the record which certified that the above-described alien rejected by the Board of Special Inquiry "is, in my opinion, helpless from infancy. * * * [Signed] Chas. W. Vogel."

At the time the child arrived here she was nine years of age. She was excluded under section 2 of the Act of February 20, 1907 (34 Stat. 898), and the mother as accompanying alien for the imbecile child, and the younger children were excluded as persons likely to become public charges.

By direction of the Department, the mother and two other children were admitted, satisfactory substitute having been furnished in lieu of the mother to accompany the excluded imbecile. The afflicted alien and the attendant were placed on the steamship President Grant for deportation, July 20, 1914, which vessel, however, returned to port on account of war conditions. On August 6, 1914, on account of war conditions, the Department authorized the alien's temporary admission under a bond for a period of one year, voluntary departure to be effected sooner if so directed. The bond contained a clause, among others, that the alien would be accorded care in an institution adapted to the treatment of her disability. At the expiration of a year, war conditions being such that deportation was rendered impossible, arrangements were made for the execution of a new bond which was authorized by the Bureau July 15, 1915, guaranteeing the alien's voluntary departure without expense to the government at the expiration of the bond which had been executed for one year, or sooner, as directed by the Department.

No further action was taken in the case until the attention of the Bureau was directed thereto on July 30, 1919. The Department's reply was the issuance of a warrant of arrest dated August 6, 1919, which recited that the alien had been found in the United States in violation of the Immigration Act of February 5, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 959, 960, 4289¼a to 4289¼u), for the following among other reasons: That she was an imbecile at the time of her entry into the United States, and that she was a person likely to become a public charge at the time of her entry.

This warrant was duly served on August 9, 1919, on the alien in Olean, N. Y. A hearing was had at Olean on August 19, 1919. At this time it appeared that the father of the alien had been naturalized on the 26th day of November, 1917, and the inspector recommended cancellation of the warrant on the ground that the child was "apparently now a citizen of the United States" by virtue of her father's naturalization papers; her father having been naturalized since her arrival in

this country. The alien was permitted to remain at Olean under the bond theretofore executed. Upon this record of the hearing, the Department directed (September 27, 1919) that action be deferred until deportation to Russia became possible, at which time the alien should be re-examined by the public health surgeons as to her mental condition.

On April 18, 1921, the Secretary of Labor issued a warrant of deportation to Lithuania. The alien was again medically examined at Ellis Island on August 10, 1921, at which time the board of surgeons of the public health service again certified her to be an imbecile and confirmed the previous certificate issued against her. She was, however, paroled in the custody of her father on August 23, 1921, for the reason that certain legislation was pending having in view legalizing the entry of defective aliens who had been temporarily landed during the war because of the impracticability of effecting deportation.

On February 17, 1923, the Second Assistant Secretary of Labor notified the Commissioner of Immigration to hold the deportation warrant in view of the legislation then pending. The pending bill failed of enactment, and on April 10, 1923, the Commissioner of Immigration inquired of the Department at Washington what disposition should be made of the case. As a result of this inquiry, and as an answer thereto, the Department, on April 23, 1923, directed the deportation without further delay.

On the foregoing state of facts, the relator contends that she is now a citizen of the United States by virtue of her father's naturalization and, therefore, cannot be deported; and, secondly, that in any event the government is barred from proceeding, as more than five years have elapsed since the alien's entry. Section 19, Immigration Law, Act Feb. 5, 1917.

It is not disputed that, upon her arrival at Ellis Island, the relator was one of a class excluded under the Immigration Laws (section 2, Act of 1907). Had not war conditions prevailed, there can be no doubt she would have been shortly deported. The law provides a definite procedure for lawful entry of an immigrant to the United States. The medical officers of the public health service examined this alien upon her arrival and certified that she was an imbecile. The Board of Special Inquiry ordered her deported on that ground. That decision has never been revoked or reversed. Indeed, a decision based on the certificate of the examining medical officers that the alien is an imbecile is final. Rule 17, subd. 4, accompanying Immigration Act.

There can be no question that Congress has the power to prescribe, by statute, conditions for the entry of aliens into the United States and may also provide for their deportation. Any alien coming physically into the United States in violation of such statutes acquires no absolute right to remain here. When and if, however, this alien has become a citizen, the immigration authorities are ousted of jurisdiction and are without authority to deport her.

[1] The relator contends that section 2172, U. S. R. S., title XXX (Comp. St. § 4367), and also section 5 of the Act of March 2, 1907,

(34 Stat. L. 1229 [Comp. St. § 3962]), are both applicable and define her status as a citizen.

The United States Revised Statutes, tit. XXX, § 2172, provided that the children of persons who have been duly naturalized, "being under the age of twenty-one years at the time of the naturalization of their parents, shall, if dwelling in the United States, be considered as citizens thereof.  *  *  * ".

Section 5 of the Act of March 2, 1907 (34 Stat. L. 1229), provides as follows:

"Sec. 5. That a child born without the United States of alien parents shall be deemed a citizen of the United States by virtue of the naturalization of or resumption of American citizenship by the parent: Provided, that such naturalization or resumption takes place during the minority of such child; and provided further, that the citizenship of such minor child shall begin at the time such minor child begins to reside permanently in the United States."

[2] Under the provisions of section 2172, from time to time the courts were called upon to determine the status of minor children of naturalized parents. It would seem that some of these decisions, if not in conflict, proceeded to a given conclusion from quite different premises. As Judge Gray, in U. S. ex rel. De Rienzo v. Rodgers, 185 Fed. 334 (Third Circuit, April 12, 1911) well said (page 337, 107 C. C. A. 452, 455): "There was an obvious ambiguity in the words, 'if dwelling in the United States.' " In order that there might be no further doubt as to the meaning of the phrase "dwelling in the United States," Congress, in pursuance of the recommendation of the Citizenship Commission of 1906 (House Com. on Foreign Affairs Report No. 4784, 59th Congress, 1st Session) enacted the law of March 2, 1907, section 5 of which is quoted above. The provisions of the first clause of section 2172 in so far as they apply to the children of aliens born outside the United States are superseded by the Act of March 2, 1907, section 5 (supra). If, however, the earlier statute were still applicable, the relator, to claim the status of citizen, must have been "dwelling in the United States" at the time of her father's naturalization. There must, however, have been a legal landing. Zartarian v. Billings, 204 U. S. 170, 27 Sup. Ct. 182, 51 L. Ed. 428. "Never having legally landed, of course could not have dwelt within the United States." Under the later act (1907), the language is clear and explicit. The citizenship of the minor child, by virtue of her father's naturalization, now begins only when she "begins to reside permanently in the United States." We are here concerned with section 5 of the Act of March 2, 1907, supra. U. S. ex rel. De Rienzo v. Rodgers, 185 Fed. 334, at page 337, 107 C. C. A. 452.

[3] The relator directs the court's attention to the decision of the Circuit Court of Appeals in this circuit in U. S. ex rel. Sejnensky v. Tod, 285 Fed. 523, in which case an alien woman, upon her arrival in this country, had been ordered deported on the ground that she was afflicted with a dangerous and contagious disease. She was released temporarily on bond and while in that status married an American citizen, thereby becoming a citizen herself under the law as it then was.

The court held that, having acquired American citizenship by marriage, she ceased to be an alien and the immigration authorities had lost their jurisdiction over her, as that jurisdiction applies only to aliens, and not to citizens. The writ was sustained and the relator released.

It would seem that the Sejnensky Case is clearly distinguishable from the case at bar. The right of aliens to acquire citizenship is purely statutory. The minor child in the case at bar may become a citizen by virtue of her parent's naturalization only upon the fulfillment of the condition precedent, to wit, that such citizenship shall begin at the time such child begins "to reside permanently in the United States."

In the Sejnensky Case, the citizenship of the relator began instantly upon her lawful marriage to an American citizen. While upon arrival she belonged to the excluded class and the immigration authorities then had jurisdiction to deport her, such jurisdiction terminated the instant she became an American citizen by marriage.

In the case at bar, it is begging the question to say that the relator cannot be deported because she is now an American citizen, because it assumes a status which is the very crux of the matter, viz., that at the time of, or subsequent to, the naturalization of her parent, she began "to reside permanently in the United States." This reasoning assumes that an alien can begin to "reside permanently in the United States" in defiance of its law and in defiance of the lawful mandate of the authority vested by law with power to deport such alien.

[4] Attention is called to the inspector's report of the hearing at Olean on August 19, 1919. The conclusion of the inspector appended to this report of the hearing, that "the child is apparently now a citizen of the United States," together with his recommendation that the warrant be canceled, are gratuitous and can have no weight. That report was followed by a direction from the Department that further consideration be deferred until deportation to Russia becomes possible. The decision of the Special Board of Inquiry was still final and the alien continued to be a temporary sojourner.

But the petitioner further contends that a telegram of the Assistant Secretary of Labor, on August 23, 1921, to the immigration authorities at Ellis Island, to "release Paula Patton to her people or to any one else who may call for her," freed her from the mandatory provisions of the Immigration Act excluding her from admission to the United States. I do not think so. The warrants of arrest and deportation have never been withdrawn or canceled. Under the statute, the decision of the Board of Special Inquiry, based on the certificate of the public health service officers, that the alien is an imbecile, is final and is not subject to review by the Secretary of Labor. Rule 17, subd. 4, accompanying Immigration Law.

Temporary physical presence in the United States by sufferance can hardly be the basis of a claim of permanent residence.

In the case of U. S. v. Ju Toy, 198 U. S. 253, at page 263, 25 Sup. Ct. 644, at page 646 (49 L. Ed. 1040), the court said:

"The petitioner, although physically within our boundaries, is to be regarded as stopped at the limit of our jurisdiction and kept there while his right to enter was under debate."

In Chin Yow v. U. S., 208 U. S. 12, 13, 28 Sup. Ct. 202, 52 L. Ed. 369, the court said:

"It is true that the petitioner gains no additional right of entrance by being allowed to pass the frontier in custody for the determination of his case. De facto, he is locked up until carried out of the country against his will."

In U. S. ex rel. Abdoo v. Williams (C. C.) 132 Fed. 894, Judge Lacombe said:

"It has been repeatedly held that the mere being at Ellis Island in the custody of the immigration authorities is not a landing within the meaning of any provision of the Revised Statutes, and that no landing has been effected until the immigrant has been passed by the authorities at Ellis Island."

The language of the decisions quoted in regard to the law then under discussion may be applied to the interpretation of section 5 of the Law of 1907. There is no rule of strict construction to be applied to this law as against the United States, and the applicant for admission to citizenship must show strict compliance with the conditions imposed.

If the alien had been smuggled or surreptitiously brought into the country without having been duly passed by the immigration authorities, no different status would have been attained from that where the alien is allowed to go temporarily until arrangements for her deportation could be made. There must be a legal landing. Allowing this alien to go while war conditions prevailed, whether by parole in the custody of her parent or under bond, left her in the same position, so far as her right to land in the United States is concerned, as if she had never been removed from the steamship. Never having been duly admitted to the United States—on the contrary, having been expressly excluded pursuant to the mandatory provisions of the law—she could not have begun "to reside permanently within the United States" within the provisions of section 5 of the Act of March 2, 1907, and hence she is not a citizen.

[5] The petitioner further urges that the government is barred from deporting the infant by the statute of limitations.

Section 19 of the Immigration Law (Act Feb. 5, 1917) provides:

"That at any time within five years after entry, any alien who at the time of entry was a member of one or more of the classes excluded by law * * * shall, upon the warrant of the Secretary of Labor, be taken into custody and deported."

Assuming, for the sake of argument, that the statute began to run, I think the warrant was issued within five years. While the authorization for temporary admission was dated August 6, 1914, the record states that she was allowed to go to her parents under bond on August 10, 1914. The warrant for her arrest was issued August 6, 1919.

Statutes of limitation in deportation proceedings are analogous to criminal statutes and cease to run upon the institution of such proceedings for deportation by the issuance of the warrant of arrest. U. S. ex rel. David v. Tod, U. S. ex rel. Schumacher v. Tod (Nos. 159 and 190, Second Circuit) 289 Fed. 60, following Bun Chew v. Connell, 233 Fed. 220, 147 C. C. A. 226. If this were not so, successful concealment by the alien longer than the period of limitation would defeat

the law, even though the warrant were issued within five years from entry.

But "entry" means lawful entry. The alien has never been passed by the immigration authorities; on the contrary, she was found, upon arrival, to be one of the class whose exclusion was mandatory. If under one statute it can be said that she never began "to reside permanently in the United States," and therefore she is not a citizen, it can, in like manner, be said that there has never been a lawful "entry" into the United States under the Immigration Act and the statute of limitations has not run.

Attention is further directed to the warrant of deportation, which is based not alone on the fact that at the time of arrival the infant was an imbecile, but that "she was a person likely to become a public charge at the time of her entry."

It is quite probable that Congress in excluding mental defectives, and including them in the class of those likely to become a public charge, intended to exclude such persons not alone for that reason, but also to prevent the introduction into this country of the strain of mental defect that may continue and multiply, irrespective of the immediate effect thereof on earning capacity. Senate Report No. 352, 64th Congress, 1st Session, to accompany H. R. 10384. However, in view of the reasons stated herein, it is unnecessary to discuss this phase of the matter.

The writ is dismissed, and the alien remanded.