**UNITED STATES ex rel. GOLDMAN v. TOD, Commissioner of Immigration, et al.**

- (District Court, N. D. New York. January 2, 1924.)

**1. Citizens ⬅9—Later of two statutes on same subject-matter prevails.**

Act March 2, 1907, § 5 (Comp. St. § 3962), specifying when a child born without the United States of alien parents shall be deemed a citizen "by virtue of the naturalization of or resumption of American citizenship by the parent," being later than Rev. St. § 2172 (Comp. St. § 4367), and covering the same subject, must prevail.

**2. Citizens ⬅9—Feeble-minded child, permitted to enter country temporarily under bond, not "dwelling" in country within naturalization statute.**

Feeble-minded child of alien parents who was permitted to enter the United States temporarily under bond, though not admissible under Immigration Law, § 3 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼b), did not, while child was within country on naturalization of father, become citizen under Rev. St. § 2172 (Comp. St. § 4367), since such child was not "dwelling" in the United States, within the statute.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Dwelling—Dwelling House.]

**3. Estoppel ⬅62(2)—Indulgence of officers in not deporting defective alien temporarily admitted held not to estop government from denying that he was dwelling or residing permanently in the country so as to become citizen on naturalization of father.**

Indulgence of immigration officers and of Department of Labor in not deporting defective minor alien who had been permitted to enter temporarily under bond did not estop the government from claiming that such child was not dwelling in the United States so as to become a citizen on naturalization of father under Rev. St. § 2172 (Comp. St. § 4367), or Act March 2, 1907, § 5 (Comp. St. § 3962), in view of Immigration Law, § 17 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼ii).

**4. Estoppel ⬅62(2)—Recital in father's naturalization certificate held not to estop government from denying that child became citizen.**

Recital of child's name in father's naturalization certificate did not estop the United States from asserting that the child did not become a citizen on naturalization of father under Rev. St. § 2172 (Comp. St. § 4367), or Act March 2, 1907, § 5 (Comp. St. § 3962).

**5. Aliens ⬅54—Alien found feeble-minded held to have been accorded a fair and impartial hearing.**

Examination of alien by medical officers of the United States Public Health Service *held* fair and impartial, notwithstanding publication of newspaper article, purporting to state views of immigration official, that such alien should be deported.

**6. Aliens ⬅54—Evidence held to sustain finding that alien was feeble-minded.**

In habeas corpus proceedings by alien who had been ordered deported because feeble-minded, evidence *held* to support finding of Board of Medical Officers and of Board of Special Inquiry that alien was feeble-minded, under Immigration Law, § 3 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼b).

**7. Aliens ⬅54—Findings in deportation and exclusion proceedings final, where supported by evidence.**

Findings in deportation and exclusion proceedings as to defective aliens, under Immigration Law, § 3 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼b), are final, where there is evidence in support thereof.

Habeas corpus by the United States, on the relation of Samuel Goldman, against Robert E. Tod, Commissioner of Immigration at the Port of New York, and another. Writ dismissed, and relator remanded.

Ralph Shulman, of Syracuse, N. Y. (Louis Marshall, of New York City, and Lewis M. King, of Schenectady, N. Y., of counsel), for relator.

Oliver D. Burden, U. S. Atty., of Syracuse, N. Y., for respondents.

COOPER, District Judge. This is a habeas corpus proceeding. A writ was issued out of this court on behalf of the relator, Samuel Goldman, a minor, to the respondent, the Commissioner of Immigration, for the port of New York, to test the validity of the detention of the relator, who was taken by the Commissioner upon a warrant for his deportation issued by the Department of Labor under the Immigration Law (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 4289¼a–4289¼u).

The facts generally are undisputed, and are as follows:

The relator, Samuel Goldman, was born in Ukrania, Russia, on August 20, 1908. The family thereafter moved to Roumania. He came to the United States at the age of 13, arriving on the Steamship Megantic, at the port of New York, on January 21, 1921, accompanied by his mother and two sisters, and was classed as a Roumanian. At Ellis Island he was examined by medical officers of the Public Health Service, who found

him feeble-minded, and on their certificate the Board of Special Inquiry pronounced him to be feeble-minded, and not admissible under section 3 of the Immigration Law (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼b). An appeal was taken to the Secretary of Labor, and the relator was permitted to enter the United States temporarily under a public charge and departure bond, which was executed March 8, 1921, and which stipulated that the alien would depart from the United States at the expiration of one year, without expense to the United States. Thereupon he proceeded to Syracuse, where his father lived, and has lived there with his father ever since, entering one of the public schools in March, 1921, in the grade of children 6 to 7 years of age, and, except for the periods of time that he came down to Ellis Island for further medical examination, or during vacations, he has been in regular attendance at the school.

The relator appealed to the Board of Medical Officers of the Public Health Service, and was given further medical examinations on February 28, 1922, April 27, 1922, and April 2, 1923, and the original finding of feeble-mindedness was affirmed in each instance.

On March 7, 1922, the Department directed that the relator be deported, but the bond granting temporary admission was extended on May 15, 1922, then to January 1, 1923, and later for a further period of 3 months.

On April 21, 1923, the Department of Labor directed that the bondsmen be called upon to effect departure, as stipulated in the bond, failing which, warrant of arrest would issue. The relator alien failed to depart, and warrant of arrest was issued May 9, 1923, and was served on May 14, 1923, whereupon the court, on relator's petition, issued the writ now before the court.

On November 25, 1922, Isadore Goldman, the father of the relator, was naturalized, and a certificate of citizenship was issued to him by the Supreme Court of the state of New York, in Onondaga County.

Section 3 of the Immigration Law (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼b), under which the relator was held for deportation, reads as follows: "That the following classes of aliens shall be excluded from admission into the United States: All idiots, imbeciles, feeble-minded persons, epileptics * * *."

The relator contends that under section 2172 of the Revised Statutes (Comp. St. § 4367) he became a citizen upon the naturalization of his father November 25, 1922; being then "dwelling" in this country, and cannot be deported.

The government contends that section 2172 of the Revised Statutes has been superseded by section 5 of the Act of March 2, 1907 (34 Stat. L. 1229 [Comp. St. § 3962]), and that the latter section is applicable.

The government further contends that whichever section is applicable the relator did not become a citizen upon the naturalization of his parent, because he did not "begin to reside permanently" in the United States within the meaning of section 5 of the Act of 1907, nor did he "dwell" in the United States within the meaning of section 2172, at, before, or after the naturalization of his father, or at any time, because not entitled to so legally "reside" or "dwell."

It is not denied by the government that, if the relator is a citizen, he cannot be deported.

The first question, then, is whether or not the relator is a citizen within the meaning of whichever of these statutes is applicable.

The statutes referred to are as follows:

Section 2172 of the Revised Statutes (Comp. St. § 4367): "The children of persons who have been duly naturalized under any law of the United States, or who, previous to the passing of any law on that subject, by the Government of the United States, may have become citizens of any one of the States, under the laws thereof, being under the age of twenty-one years at the time of the naturalization of their parents, shall, if dwelling in the United States, be considered as citizens thereof. * * * *"

Section 5 of the Act of March 2, 1907 (34 Stat. L. 1229 [Comp. St. § 3962]): "That a child born without the United States of alien parents shall be deemed a citizen of the United States by virtue of the naturalization of or resumption of American citizenship by the parent: Provided, that such naturalization or resumption takes place during the minority of such child: And provided further, that the citizenship of such minor child shall begin at the time such minor child begins to reside permanently in the United States." 34 Stat. L. 1229.

Section 2172 of the Revised Statutes was enacted in 1802, as part of the Naturalization Law of the United States, and was a codification or re-enactment of Acts of March 26, 1790 (1 Stat. L. 103), and January 29, 1795 (1 Stat. L. 414). This section has never been expressly repealed or amended by any subsequent act, though the General Naturalization Law has been amended

*and codified since 1802.* The next important act relating to alien minors in connection with citizenship was the Act of March 2, 1907 (34 Stat. L. 1228), section 5 of which appears above. There has been no important change of statute with respect. to the citizenship of minor aliens since 1907, down to the commencement of this proceeding. ·

Although the Act of March 2, 1907, is en-. titled "An act in reference to the expatriation of citizens and their protection abroad," it has been held on good authority that section 5 thereof, above set forth, has, since March 2, 1907, been the law applicable to minor aliens coming to this country, and claiming citizenship because of the naturalization of the parent. This was held by the Circuit Court of Appeals in the Third Circuit in the case of United States ex rel. De Rienzo v. Rodgers, 185 F. 334, 107 C. C. A. 452. It is there held that section 5 of the Act of March 2, 1907, though not in the form of an amendment or repealing act, was passed for the purpose of removing the ambiguity in the word "dwelling" in section 2172, the language being changed in section . 5 of the Act of March 2, 1907 (Comp. St. § 3962), to read: "The citizenship of such ·minor child shall begin at the time such minor child begins to reside permanently in the United States."

See, also, the well-considered opinion of Winslow, D. J., in United States ex rel. Patton v. Tod (decided July 6, 1923; D. C.) 292 F. 243: "The provisions of the first clause of section 2172, in so far as they apply to the children of aliens born outside the United States, are superseded by the Act of March 2, 1907, § 5 (supra)."

No case has been cited by the relator, and none has been found, holding that, since the Act of March 2, 1907, section 2172, Rev. St., has any application to minor aliens born outside of the United States coming to the United States and . claiming citizenship by naturalization of the parent.

True, the title to the Act of March 2, 1907, does not relate to the status or citizenship of minor aliens entering the country. But the title will not be controlling, since the language admits of no doubt that it is intended to apply to alien minors coming to the United States.

[1] The "naturalization or resumption of American citizenship by the parent," and the minor alien's "beginning to reside permanently in the United States," can only take place within the country. Manifestly, this language can have no application to protection abroad, or status abroad. Two statutes covering the .same subject cannot both apply. The later one must prevail.

Relator must therefore fail, if his claim of citizenship is based on the contention that section 2172 of the Revised Statutes is the law applicable, and not section 5 of the Act of March 2, 1907.

But, if it be conceded that section 2172 of the Revised Statutes is the law governing the citizenship of minor aliens, based on the naturalization of the father, the relator must, nevertheless, fail.

[2] The relator asks the court to hold that this defective minor alien, who was in the country only under bond for departure, was "dwelling" in the United States within the meaning of section 2172 of the Revised Statutes, when his father became a citizen, and that he thereby became a citizen upon the naturalization of his father.

To hold this is to hold that a defective minor alien, unfit under one statute (Immigration Law) to lawfully enter the United States, is nevertheless under another statute (section 2172, R. S.) made a citizen, with all the rights pertaining to citizenship, including the right to be and reside permanently where he will in the United States, and the right, if it be a right, to public support, if unable to support himself.

Such construction is contrary to reason. By such construction the Immigration Law is nullified, so far as defective minor aliens are concerned.

But the relator, to evade being placed in such position, insists that he is without the scope of, and beyond the prohibition of, section 3 of the Immigration Law, because he did physically enter the country, and did dwell in the flesh here with his parents, at the naturalization of his father, and has done so since about January 21, 1921, and is therefore subject only to ·the Naturalization Law.

Prior to the time that there was any restriction upon immigration into this country, no such question could arise as to the application of the Naturalization Law. It applied to all immigrants not disqualified for citizenship by the Constitution.

After the enactment of the Immigration Law, the Naturalization Law could apply only to those who could lawfully enter under the Immigration Law. Until the alien was found lawfully qualified to enter under the Immigration Law, and did enter after such determination, he was subject to its provisions. Upon lawfully entering, he was no longer subject to its provisions, as far

as citizenship is concerned, but passed under those of the Naturalization Law.

That the relator did not lawfully enter the country in conformity with its laws, so as to pass from the restriction of the Immigration Laws to the rights of the Naturalization Law, under either section contended for, is established by abundant authority. U. S. ex rel. De Rienzo v. Rodgers, 185 F. 334, 107 C. C. A. 452; U. S. ex rel. John Abdoo v. Williams (C. C.) 132 F. 894; In re Gayde (C. C.) 113 F. 588; Chin Yow v. U. S., 208 U. S. 8, 28 S. Ct. 201, 52 L. Ed. 369; Zartarian v. Billings, 204 U. S. 170, 27 S. Ct. 182, 51 L. Ed. 428; U. S. ex rel. Pola Patton v. Tod (D. C.) 292 F. 243; Nishimura Ekiu v. U. S., 142 U. S. 651, 12 S. Ct. 336, 35 L. Ed. 1146; U. S. v. Ju Toy, 198 U. S. 253, 25 S. Ct. 644, 49 L. Ed. 1040; In re Camaras (D. C.) 202 F. 1019. Some of these cases were decided before, and some after, the enactment of section 5 of the Act of March 2, 1907.

It is true that in most of these cases the alien never left the actual physical custody of the immigration authorities. But in the case of U. S. ex rel. Pola Patton v. Tod, supra, the alien resided with her parents in this country from 1914 to 1923 under bond of departure, and under circumstances very similar to the case at bar. In re Camaras (D. C.) 202 F. 1019, the alien was temporarily admitted under bond of departure, and in the Nishimura Ekiu v. U. S. Case, the alien resided in the Methodist Episcopal Immigrant Home out of actual custody, pending a final disposition of the writ.

It seems, however, unimportant whether the alien was in the actual custody of the immigration authorities at the boundary line or was within its boundaries in the constructive custody of the authorities under a bond requiring the alien to be surrendered for deportation, as in the Patton Case, and in the case at bar.

The foregoing cases all hold, in substance, that, until the alien has been admitted in conformity to the Immigration Law, the alien cannot be said to have lawfully entered, dwelt, or resided within the country.

In Nishimura Ekiu v. United States, supra, the court said: "Putting her in the mission house, as a more suitable place than the steamship * * * left her in the same position, so far as regarded her right to land in the United States, as if she never had been removed from the steamship."

In Chin Yow v. United States, supra, Mr. Justice Holmes, delivering the opinion of the court, said: "It is true that the petitioner gains no additional right of entrance by being allowed to pass the frontier in custody for the determination of his case. * * * De facto he is locked up until carried out of the country against his will."

In U. S. ex rel. Abdoo v. Williams, supra, Judge Lacombe said: "It has been repeatedly held that the mere being at Ellis Island in the custody of the immigration authorities is not a landing within the meaning of any provision of the Revised Statutes, and that no landing has been effected until the immigrant has been passed by the authorities at Ellis Island."

In U. S. v. Ju Toy, supra, the court said: "The petitioner, although physically within our boundaries, is to be regarded as * * * stopped at the limit of our jurisdiction and kept there while his right to enter was under debate."

In U. S. v. Wong Kim Ark, 169 U. S. 649, 686, 18 S. Ct. 456, 471 (42 L. Ed. 890), Mr. Justice Gray, delivering the opinion, said that the Naturalization Acts of the United States have been careful to limit admission to citizenship to those "within the limits and under the jurisdiction of the United States."

In Zartarian v. Billings, 204 U. S. 170, 27 S. Ct. 182, 51 L. Ed. 428, the court said of an alien: "Never having legally landed, of course [he] could not have dwelt within the United States."

In U. S. ex rel. De Rienzo v. Rodgers, supra, the court said: "Under the Act of March 2, 1907, citizenship is only conferred upon the minor child of a naturalized alien when (or if) he has begun to reside permanently in the United States. Until then, he is an alien, and he cannot begin to so reside if he belongs to a class of aliens debarred from entry into the country by the act to regulate the immigration * * * into the United States. The language of Mr. Justice Day [Zartarian v. Billings, 204 U. S. 170] in regard to the law then under discussion [section 2172 of Rev. Stat.] may be applied with little change to the situation under section 5 of the Act of 1907, and it is still true that Congress has never said that a alien child, who has never begun to reside permanently in the United States, coming to join a naturalized parent, may land, when an idiot, or otherwise belonging to the excluded classes."

[3] Does the fact that officers of the immigration service and of the Department of Labor have been indulgent in not deporting the defective minor alien at once, but have permitted him to go to his father un-

der deportation bond, make him an exception, and give him admission, or make his entry lawful? Can the mere manner of enforcement, or even nonenforcement, by the enforcing officers, change the law, or the status of those coming within its provisions? Do the acts or indulgences of the enforcement officers of the Immigration Bureau or Department of Labor waive the application of the statutes as to this alien, or estop the government from enforcing its laws, and deporting him? Manifestly not. Such has never been held. It would not be so, even if there were no such provision in the Immigration Law, as there is, viz., section 17. This section reads in part as follows: "Provided, that the decision of a Board of Special Inquiry shall be based upon the certificate of the examining medical officer * * * and shall be final as to the rejection of aliens affected * * * with any mental or physical disability which would bring such aliens * * * under section 3 of this act." Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼ii.

How then can an alien be said to have lawfully entered the country so that he may "dwell" therein until he has been admitted pursuant to its Immigration Laws?

The defective minor alien can, therefore, no more "dwell" in this country under section 2172 of the Revised Statutes since the enactment of the provisions of the Immigration Law prohibiting his entrance than he can "begin to reside permanently" in this country under section 3 of the Act of March 2, 1907.

The principle is the same under both statutes. Until admitted in conformity with the Immigration Law, he can acquire no rights of citizenship under either statute.

The petitioner cites and places much emphasis upon the case of U. S. ex rel. Sejnensky v. Tod (C. C. A.) 285 F. 523, 26 A. L. R. 1316, in which a woman as much disqualified to enter under the terms of the Immigration Law as is the defective minor alien here was held to have acquired citizenship by marriage to a citizen while in similar constructive possession of the immigration authorities.

The Sejnensky Case is clearly distinguishable from the case at bar. Prior to the repealing act of 1922 (42 Stat. 1022) an alien woman, under section 1994 of the Revised Statutes (Comp. St. § 3948), automatically became a citizen upon her marriage to a citizen whether married abroad or in this country, without condition or qualification.

U. S. v. Williams (D. C.) 173 F. 626, Id., 184 F. 322, 106 C. C. A. 464.

There is, however, a condition precedent as to the citizenship of the minor alien, viz., "dwelling" in the country under section 2172 of the Revised Statutes, or "beginning" to "permanently reside in the United States," under the act of 1907. No such condition precedent was required for the citizenship of an alien woman who married a citizen. The Sejnensky Case, therefore, lacks such analogy as to be controlling here.

[4] The relator also suggests that the United States is estopped from asserting that the relator is not a citizen, and claims that the recital of his name in the naturalization certificate of his father is a judgment binding upon the United States, and only subject to attack in a direct proceeding for that purpose. This claim is of no avail, as such recitals in the certificate of naturalization are merely statutory formalities, and are in reality declarations by alien parent in his own behalf, and do not estop the government.

[5] The relator insists that he is not feeble-minded. He also asserts that he did not have a fair examination by the Board of Medical Officers of the United States Public Health Service, because there was prejudice and ill will aroused about him by certain newspaper articles, which he asserts prevented his having a fair examination.

It appears from the record in this case that the examination made on his arrival at the port of New York on January 27, 1921, was made by examining Surgeons Wildman, Faughman, and Scott. The examination of February 28, 1922, was made by examining Surgeons Wildman, Faughman, and Shockley.

On April 27, 1922, on his appeal, he was examined by a Board of Medical Officers of the United States Public Health Service, consisting of Drs. Wildman, Sandidge, and Loughran, at which examination Dr. Locke of Syracuse was present as medical expert in behalf of the petitioner, and produced before the examining surgeons his opinions and the records of the work of the plaintiff in the public schools of Syracuse.

He was later examined on April 2, 1923, by another Board of Medical Officers of the United States Public Health Service, in the presence of Dr. Benford, another expert from Syracuse, who was present in behalf of the relator, which examination was made by Drs. Weldon, Fuller, and Loughran.

All of these eight federal surgeons who examined him on these four different ex-

aminations, from January 27, 1921, to April 2, 1923, decided that he was feeble-minded, and the examiners at all of the last three examinations confirmed the previous findings that the relator was feeble-minded. It appears by the record that examining surgeons received and considered all of the evidence of his mental condition that was offered on his behalf. It is difficult to see what more these examining surgeons could have done to give this boy a full and fair examination and his friends an opportunity to prove his assertion that he was not feeble-minded.

The petition sets forth as ground for the assertion that the relator did not get a fair hearing and that the respondent was prejudiced against the relator by an article in a New York paper of the 1st of April, 1923, the day before the last examination, in which the respondent is represented as assailing "politicians and lawyers who are making a mockery of immigration laws," and asserting that there were 83 cases then pending, of which that of the relator was one, and in which the commissioner is said to have asserted that "the facts in the Goldman case were incontrovertible, and that the boy as a Roumanian subject should be deported."

The respondent was not one of the examining surgeons of this Board of Medical Officers of the United States Public Health Service, who passed on this relator's mentality, and he had no power of appointment of those medical officers to or their removal from the Immigration Service. Nothing warrants any inference that these medical officers were in any way influenced by this newspaper article. Even if we assume that the respondent's views were correctly represented by the newspaper article, and further assume that the article came to the attention of the examining surgeons prior to the examination of April 2, 1923, this court cannot assume or find therein any reasonable ground for believing that the three examining surgeons on the 2d day of April were prejudiced in their findings, and did not give the relator a fair examination. True, Dr. Banford of Syracuse was present, and disagreed with them, and was of the opinion that the relator "in the ordinary course of nature will advance mentally to a point where he will be at least self-supporting." But that was not a very strong statement, and in any event it was their duty, while taking all the evidence into consideration, to decide according to their own judgment.

[6] There is no legal basis, therefore, for holding that the relator did not have a fair and unprejudiced hearing. There was evidence to support the finding of the Board of Medical Officers, and of the Board of Special Inquiry.

[7] The findings in deportation and exclusion proceedings as to defective aliens under section 3 are final where there is evidence to support it. Low Wah Suey v. Backus, 225 U. S. 460, 32 S. Ct. 734, 56 L. Ed. 1165; U. S. v. Uhl (C. C. A.) 271 F. 676; Skeffington v. Katzeff (C. C. A.) 277 F. 131; U. S. ex rel. Fink v. Tod (decision by Judge Hough not reported), order affirmed 1 F.(2d) 246.

Writ dismissed, and relator remanded.