## SCHNEIDER v. UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE et al.

No. 787.

District Court, W. D. Washington, S. D.

April 13, 1946.

Robert B. Abel, of Tacoma, Wash., for petitioner.

J. Charles Dennis, U. S. Atty., and Guy A. B. Bovell, Asst. U. S. Atty., both of Tacoma, Wash., for respondents.

LEAVY, District Judge.

This is a proceeding in habeas corpus, whereby the petitioner, Sylvester Joseph

Schneider, seeks his discharge from an order directing that he be deported to Canada.

The petitioner herein, on the 29th day of August, 1945, was ordered deported to his native country of Canada by the Board of Immigration Appeals, after a hearing upon a warrant charging that he had more than once been convicted for crimes involving moral turpitude. 8 U.S.C.A. § 155.

The petitioner was born December 31, 1917, in the Dominion of Canada. He entered the United States at Portal, North Dakota, on December 19, 1920, when he was not quite three years of age. He accompanied his father and mother and other minor brothers and sisters. He has resided continuously in the United States since the date of entry.

An agreed statement of fact has been submitted and made a part of the record, a summary of which is as follows:

Petitioner's father, Frank Schneider, was born in Russia on March 27, 1884, and first came to the United States on November 5, 1906, his entry being in compliance with the then existing law. In the spring of 1907, he filed a declaration of homestead, making commutation proof thereon in 1908. In 1913 he went to Canada, accompanied by his wife and two children, where he remained for seven years, but took no steps to become a citizen of Canada. During the stay of the Schneider family in Canada, two more children were born to them, the youngest of whom was the petitioner herein. The petitioner's father, Frank Schneider, registered under the Selective Service Act, 50 U.S.C.A.Appendix § 201 et seq., for United States military service in 1917, at Burdette, Saskatchewan, Canada, and was by his United States draft board granted an exemption because of his family.

On November 7, 1920, the petitioner's father, mother and the four children, one of whom was the petitioner, returned to the United States by way of Portal, North Dakota, a designated port of entry for immigrants. The father presented to the Immigration Inspector at that port his final proof of homestead for the lands in Perkins County, South Dakota. Upon such showing the Immigration Inspector admitted him to the United States and no record of arrival of the father or any member of the family was made at that time, both the Immigration Inspector and the petitioner's father assuming that the father was a citizen of the United States.

On December 27, 1928, when petitioner's father discovered his patent to the government homestead land had been granted to him upon his declaration based upon his first entry to the United States, and did not confer citizenship upon him, he filed a second declaration of intention at Aberdeen, South Dakota, alleging his first entry at Portal, North Dakota in 1906. He was thereupon advised by the immigration authorities that, due to his seven years residence in Canada prior to 1920, he would have to base his declaration of intention upon his re-entry into the United States, and on April 24, 1935, he filed with the Immigration Service his application for registry as an alien, making the showing in the application required by the then existing law. 8 U.S.C.A. § 728. This application was made by the father alone. In due time it was granted, and he was issued a certificate of arrival nunc pro tunc, as of November 7, 1920. On the 26th day of May, 1936, in the 5th Judicial Circuit of South Dakota at Aberdeen, a State Court, he was granted his final naturalization papers.

During all of the time subsequent to the father's arrival in the United States upon his second entry, to and after the time of his naturalization, the petitioner was a minor child living with his parents in the care and custody of his father and mother, and his name was listed in the naturalization proceedings of his father as a minor child so residing with him. The petitioner was over the age of eighteen years at the time of the naturalization of his father.

Subsequent to the petitioner's father's naturalization, on the 17th day of November, 1938, and again on the 10th day of May, 1941, the petitioner was convicted of public offenses involving moral turpitude, subjecting the petitioner to deportation proceedings if he were not in fact a citizen. By reason of these convictions a warrant of deportation was issued on August 29, 1945, by the Immigration Service, directing that the petitioner be deported, and thereafter appropriate proceedings were taken and hearings had, and he was ordered deported to Canada. Upon an appeal from this order to the Board of Immigration Appeals, the decision of the presiding inspector of the Board was affirmed, following which the proceedings herein were instituted in this court. The foregoing are the facts as agreed to by the parties to this action, and the court finds the facts to be as just recited.

The petitioner has contended throughout his hearings before the Immigration Service and here contends that he is a citizen by derivation through his father's naturalization. He relies upon the fact that at the time of his original entry into the United States he was of such tender years that he could not have made a record of entry; that the failure to have a record of entry made was due to the negligence of the representatives of the Immigration Service at Portal, North Dakota, the port of entry, and that there was no misrepresentation or fraud, and he further asserts that when his father was permitted, on application, in 1935 to make a nunc pro tunc record of entry as provided by the then existing law, this record of entry included the petitioner.

The law in force at the time of the naturalization of petitioner's father, in reference to derivative citizenship, is found in 48 Stat. 797, and reads as follows:

"Sec. 5. That a child born without the United States of alien parents shall be deemed a citizen of the United States by virtue of the naturalization of or resumption of American citizenship by the father or the mother: Provided, That such naturalization or resumption shall take place during the minority of such child: And provided further, That the citizenship of such minor child shall begin five years after the time such minor child begins to reside permanently in the United States."

It will be noted that, before a person may be entitled to derivative citizenship, such person, while still a minor child, must "reside permanently in the United States". The question for determination, therefore, is whether in contemplation of the law the residence of the petitioner can be recognized as a permanent residence. It is a fact that he has at all times continuously resided in the United States since his original entry in 1920.

Congress has not seen fit to define the term "permanent residence." There are numerous decisions dealing with this expression, and without exception they hold that even though the alien may reside physically within the United States, if he be in an excluded class, such residence can not be considered as a "permanent residence." In this case we have no issue of an "excluded class." The petitioner was in every way qualified for admission if his father at the time he brought him into this country had fully complied with the immigration laws and the regulations, or if the Immigration

Inspector at the port of entry had fully performed his duty in requiring the father to produce competent evidence of American citizenship before admitting him. There is likewise little room for doubt, had the immigration authorities properly advised the petitioner's father in 1935, concerning the essential steps to be taken for registry, the petitioner's registry would have been perfected, and the father's naturalization would have resulted in the petitioner's naturalization. These things not being done, we have here the responsibility of determining whether this petitioner "resided permanently in the United States."

There are three decisions by the Supreme Court of the United States that seem determinative of this issue. They are: United States v. Ju Toy, 198 U.S. 253, 35 S.Ct. 644, 49 L.Ed. 1040; Zartarian v. Billings, Commissioner of Immigration, 204 U.S. 170, 27 S.Ct. 182, 51 L.Ed. 428, and Kaplan v. Tod, 267 U.S. 228, 45 S.Ct. 257, 69 L.Ed. 585.

In the Ju Toy case, 198 U.S. on page 263, 25 S.Ct. 646, 49 L.Ed. 1040, Justice Holmes, speaking for the court, said:

"The petitioner, although physically within our boundaries, is to be regarded as if he had been stopped at the limit of our jurisdiction, and kept there while his right to enter was under debate."

This was a case involving an alien of the excluded class, and it might well be contended that it should be distinguished from the facts in the case at bar.

In the Zartarian case [204 U.S. 170, 27 S.Ct. 183], the alien was the minor daughter of a naturalized citizen of the United States, who was found to be afflicted with trachoma, and was therefore barred from landing. Here, again, we have an alien of the excluded class. In this case, however, the Supreme Court deals with the phrase, "dwelling in the United States," and, on page 175, of 204 U.S., 27 S.Ct. 184, 51 L.Ed. 428, has this to say:

"The right of aliens to acquire citizenship is purely statutory: and the petitioner's child, having been born and remained abroad, clearly does not come within the terms of the statute. She was debarred from entering the United States by the action of the authorized officials, and, never having legally landed, of course could not have dwelt within the United States."

In the Kaplan case [267 U.S. 228, 45 S. Ct. 258], Justice Holmes again writing the decision, and the case again dealing with

an alien falling within the excluded class, who was a minor child, and who was permitted to remain here because the European War had begun and deportation became impossible, the court passed squarely upon the phrase, "dwelling in the United States", and on page 230 of 267 U.S., 45 S.Ct. 257, 69 L.Ed. 585 stated:

"The appellant could not lawfully have landed in the United States in view of the express prohibition of the Act of 1910 just referred to, and until she legally landed 'could not have dwelt within the United States.' * * * She never has been dwelling in the United States within the meaning of the Act."

While the foregoing dealt with an alien again who was in an excluded class, being a feeble-minded person, the court saw fit to interpret the expression, "dwelling in the United States", by defining it as applying only to those aliens who legally entered the United States.

In addition to the foregoing Supreme Court decisions, there is a well-considered District Court opinion from the District Court of New York, which is United States ex rel. Goldman v. Tod, D.C., 3 F.2d 836, in which the court deals with the physical entry and the actual dwelling of a minor with his parents within the United States at the time of the naturalization of the father, and squarely holds that the words "residing" or "dwelling" can not be given the usual application unless he has been admitted in conformity to the immigration law, and one can not be said to have lawfully "dwelt" or "resided" within the country, if he has entered illegally. The court said (page 840):

"Until admitted in conformity with the Immigration Law, he can acquire no rights of citizenship * * *."

The case cited and relied upon by the petitioner is Ex Parte Kazan, D.C., 5 F.2d 243. This is a district court case from the Southern District of Texas, and fully supports the position taken by the petitioner herein, but this court can not accept it as a precedent in light of the decisions by the Supreme Court of the United States to the contrary.

There are numerous other decisions dealing with the subject of derivative citizenship of minors, and while none of them deal with facts identical with the instant case, still they seem to leave no room for doubt, insofar as the judicial interpretations go

that the phrase, "dwelling in the United States", can have application only to such "dwelling" as follows legal entry.

In this case, irrespective of who was to blame, and certainly this petitioner, due to his infancy when he crossed the border, could not be held accountable, this court is bound to follow the interpretation placed upon the word "dwelling" as announced by the Supreme Court. It is for this reason that I am impelled to the conclusion that the petition for a writ of habeas corpus herein must be denied, and the petitioner remanded to the custody of the immigration authorities for deportation, and it is so ordered.