# Matter of Kelechi Gerald NWOZUZU, Respondent

File A046 651 723 - York

*Decided September 10, 2008*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

To obtain derivative citizenship under former section 321(a) of the Immigration and Nationality Act, 8 U.S.C. § 1432(a) (1994), an alien must acquire the status of an alien lawfully admitted for permanent residence while he or she is under the age of 18 years.

FOR RESPONDENT: Troy J. Mattes, Esquire, Lancaster, Pennsylvania

FOR THE DEPARTMENT OF HOMELAND SECURITY: Jon D. Staples, Assistant Chief Counsel

BEFORE: Board Panel: COLE, PAULEY, and HESS, Board Members.

PAULEY, Board Member:

In a decision dated October 6, 2006, an Immigration Judge terminated the proceedings against the respondent, finding that the Department of Homeland Security ("DHS") failed to meet its burden of establishing the respondent's alienage. The DHS has appealed from the Immigration Judge's decision.[1] The appeal will be sustained and the record will be remanded to the Immigration Judge for further proceedings.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Nigeria who was born on March 8, 1977. He first entered the United States in 1982 at the age of 4 as the child of an F-1 nonimmigrant student. His father became a naturalized citizen of the United States on October 4, 1994, and his mother was naturalized on November 15, 1994. The respondent was 17 years old when his parents naturalized, but he was not admitted to the United States as a lawful permanent resident until December 1998, well after his 18th birthday.

---

[1] Although the Immigration Judge has also certified his decision for our review, we review the decision on appeal rather than on certification.

The respondent claims that he is entitled to derivative citizenship through his parents pursuant to former section 321(a) of the Immigration and Nationality Act, 8 U.S.C. § 1432(a) (1994), because he began to "reside permanently" in the United States while he was under the age of 18 years. The Immigration Judge agreed and found that although the respondent was not "residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized," he had submitted sufficient evidence to show that he began "to reside permanently in the United States while under the age of eighteen years." Section 321(a)(5) of the Act. The Immigration Judge therefore found that the DHS had not met its burden of establishing the respondent's alienage and terminated the proceedings.

On appeal, the DHS contends that the Immigration Judge erred in finding that the respondent had derived citizenship through his parents under former section 321(a) of the Act. Specifically, the DHS claims that the Immigration Judge erred in finding that the respondent had "resided permanently" in the United States while he was under the age of 18, because he had not been admitted as a lawful permanent resident during that time.

The DHS maintains that an alien can derive citizenship pursuant to former section 321(a) of the Act only if three things occur while the alien is under the age of 18: (1) the naturalization of both parents, (2) the residence or presence of the alien in the United States, and (3) the lawful admission of the alien as a permanent resident. According to the DHS, interpreting the statute to allow the acquisition of citizenship when an alien has less than lawful permanent resident status essentially nullifies that portion of section 321(a)(5) that does require lawful permanent resident status. Moreover, the DHS contends that the fact that the language of former section 321(a)(5) tracks section 101(a)(20) of the Act, 8 U.S.C. § 1101(a)(20) (2006), which defines the term "lawfully admitted for permanent residence," demonstrates that Congress intended to require lawful permanent residence in both portions of section 321(a)(5). Therefore the DHS claims that the Immigration Judge's ruling should be vacated and that the record should be remanded for further proceedings.[2]

---

[2] The DHS also claims that even if former section 321(a)(5) of the Act allows something less than lawful permanent resident status, the respondent has not shown that he meets this lesser requirement. Because we find that the statute does require lawful permanent resident status, it is unnecessary to address the DHS's alternate argument. We also find no need to remand for consideration of the new evidence the DHS has offered, which relates to the date on which the respondent filed his first application for adjustment of status. The parties did not dispute this date before the Immigration Judge, and the new evidence does not appear to impact the outcome of the proceedings before us.

The respondent, on the other hand, contends that the Immigration Judge acted properly in terminating the proceedings. He maintains that the second half of former section 321(a)(5) of the Act does not require that a child be "residing" in the United States "lawfully" or with some form of authorized residence prior to his 18th birthday. Moreover, he argues that Congress would not have included the second clause in section 321(a)(5) unless it intended for something less than lawful permanent resident status to satisfy the requirements for derivative citizenship. Accordingly, he claims that his evidence shows that he resided here permanently for purposes of establishing that he is entitled to derivative citizenship.

## II. STATUTE

Former section 321(a) of the Act provides, in pertinent part, as follows:

> A child born outside the United States of alien parents, or of an alien parent and a citizen parent who has subsequently lost citizenship of the United States, becomes a citizen of the United States upon fulfillment of the following conditions:
>     (1) The naturalization of both parents; . . .
>     . . .
>     . . . and if
>     (4) Such naturalization takes place while such child is under the age of eighteen years; and
>     (5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized under clause (1) of this subsection . . . or thereafter begins to reside permanently in the United States while under the age of eighteen years.[3]

## III. ISSUE

Both parties agree that the respondent's parents naturalized while he was under 18 years of age. The parties also agree that the respondent was not residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of his mother, his last parent to naturalize. The key issue, then, is whether the respondent began to "reside permanently" in the United States while under the age of 18 years. To resolve

---

[3] Former section 321 of the Act was repealed by section 103(a) of the Child Citizenship Act of 2000, Pub. L. No. 106-395, 114 Stat. 1631, 1632. However, the statute still applies to the respondent because it was the law in effect both when he turned 18 and when he was admitted as a lawful permanent resident. *See, e.g.*, *Matter of Rodriguez-Tejedor*, 23 I&N Dec. 153 (BIA 2001) (finding that the Child Citizenship Act of 2000 is not retroactive); *Matter of L-*, 7 I&N Dec. 512 (R.C. 1957) (noting that determinations involving derivative citizenship are controlled by the law in effect when the last material condition is met).

this question, we must determine whether the phrase "begins to reside permanently in the United States while under the age of eighteen years" in former section 321(a)(5) of the Act allows an alien to derive citizenship while in a status other than lawful permanent resident status. Because we find that it does not, we will sustain the DHS's appeal.

## IV. ANALYSIS

Our interpretation of the phrase "begins to reside permanently in the United States while under the age of eighteen years" starts with the terms of the statute itself. If these terms constitute a plain expression of congressional intent on their face, then they must be given effect. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984). But when Congress's intent is not plainly expressed, we must find a reasonable interpretation of the language and fill any gap left, either implicitly or explicitly. *Id.* at 843-44. The rules of statutory construction dictate that we take into account the design of the statute as a whole. *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988). Moreover, we must bear in mind that the paramount index of congressional intent is the plain meaning of the words used in the statute when they are taken as a whole. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987).

Section 321 of the Act does not define the phrase "reside permanently," and both the definition put forth by the respondent and that proposed by the DHS are plausible if the terms "reside" and "permanently" are considered in the abstract. However, we must consider the terms in the context of the Act as a whole. To do so, we must interpret the definitions of the terms "permanent," "residence," and "lawfully admitted for permanent residence" in section 101(a) of the Act, the structure of former section 321(a) of the Act, and the concept of permanent residence under the immigration laws. Taking these factors into consideration, we find that the phrase "begins to reside permanently in the United States while under the age of eighteen years" is most reasonably interpreted to mean that an alien must obtain the status of lawful permanent resident while under the age of 18 years to acquire derivative citizenship.

Section 101(a)(31) of the Act states that the term "permanent" "means a relationship of continuing or lasting nature, as distinguished from temporary, but a relationship may be permanent even though it is one that may be dissolved eventually at the instance either of the United States or of the individual, in accordance with law." The word "permanent" is also defined as "[l]asting or meant to last indefinitely," "enduring," and "[n]ot expected to change in status, condition, or place." *Webster's II New Riverside University Dictionary* 875 (1994). Both of these definitions indicate that something is "permanent" if it is lasting or is at least intended to last indefinitely.

Section 101(a)(33) of the Act states that the term "residence" means "the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent." The concept of "residing permanently" would therefore seem to require the maintenance of a lasting principal dwelling place. At first glance, it might appear that an alien could maintain a lasting principal dwelling place without obtaining lawful permanent resident status. A dwelling place, however, cannot be "permanent" or lasting under the immigration laws if it is unauthorized.

An alien who entered this country illegally or remains without authorization might maintain a home or residence here, but there is no guarantee that he or she will be able to do so for any length of time.[4] The concept of "residing permanently" therefore includes an implied requirement that the residence be lawful. An alien cannot reside in this country in a permanent, lasting sense unless the residence is lawful. Similarly, an alien admitted for a temporary period cannot be considered to be residing permanently in this country, even if he or she maintains lawful status. Accordingly, we find that the phrase "begins to reside permanently in the United States while under the age of eighteen years," when considered in light of the definitions of "permanent" and "residence" and the realities of the immigration laws of this country, is most reasonably interpreted to mean that the alien must acquire lawful permanent resident status while under the age of 18 years.

This finding is bolstered by the similarity between the language contained in the phrase "begins to reside permanently" and that in the definition of "lawfully admitted for permanent residence," which means "the status of having been lawfully accorded the privilege of *residing permanently* in the United States as an immigrant in accordance with the immigration laws, such status not having changed." Section 101(a)(20) of the Act (emphasis added). As the DHS notes, the "residing permanently" language of section 101(a)(20) closely tracks the phrase "begins to reside permanently" that Congress employed in former section 321(a)(5) of the Act. This similarity strongly

---

[4] The definition of the term "permanent" in section 101(a)(31) of the Act does acknowledge that a permanent relationship "may be dissolved eventually at the instance either of the United States or of the individual, in accordance with law," but this dissolution is distinct from the termination of an alien's unlawful presence. An alien lawfully admitted for permanent residence is guaranteed that status, provided he or she complies with the laws of this country. Thus, an alien will lose permanent resident status only if he or she violates the law or voluntarily elects to abandon the status. An alien residing in this country without authorization, on the other hand, may be required to leave at any time.

suggests that Congress intended to impose a requirement that an alien must obtain lawful permanent residence before the age of 18 to acquire derivative citizenship.[5]

Interpreting the second clause of section 321(a)(5) of the Act as requiring an alien to have lawful permanent resident status before the age of 18 does not render it surplusage, as the Immigration Judge implied. When read to require lawful permanent residence, the second clause clarifies that an alien does not have to be a lawful permanent resident at the time his or her parent naturalizes to qualify for derivative citizenship. Instead, it establishes that as long as the alien is admitted as a lawful permanent resident before he or she turns 18, citizenship may be derived from a naturalized parent. Therefore, the second clause is not surplusage but is necessary to explain the time by which the lawful permanent residence requirement of section 321(a)(5) must be satisfied.

On the other hand, if we were to allow something less than lawful permanent residence to satisfy the requirements for derivative citizenship, the second clause would effectively negate the lawful permanent residence requirement of the first clause. An alien would rarely if ever need to be "residing in the United States pursuant to a lawful admission for permanent residence" because he or she could simply show that some lesser form of residence was "thereafter" acquired before the alien reached the age of 18. We cannot conclude that Congress intended this result. *See United States v. Menasche*, 348 U.S. 528, 538-39 (1955) (stating that it is a court's "duty 'to give effect, if possible, to every clause and word of a statute'" (quoting *Inhabitants of Montclair Tp. v. Ramsdell*, 107 U.S. 147, 152 (1883))); *see also* 2A Norman J. Singer, *Sutherland Statutory Construction* § 46.06, at 104 (4th ed. 1984) (indicating that a statute or regulation should be construed to give effect to all its provisions so that no part of it will be inoperative, superfluous, void, or insignificant). Accordingly, we find that the second clause of former section 321(a)(5) of the Act is most reasonably read to require that an alien must acquire lawful permanent resident status while he or she is under the age of 18 years.

In reaching our conclusion, we note that this interpretation of section 321(a)(5) is not inconsistent with the historical approach to derivative citizenship. Federal court cases reviewing earlier versions of the Act that used

---

[5] The respondent suggests that Congress's use of the phrase "begins to reside permanently" in the second clause of section 321(a)(5), rather than a phrase specifically including the lawful permanent residence requirement, implies that it intended to allow something less than lawful permanent residence. However, the similarity in language between the second clause and section 101(a)(20) strongly indicates that Congress intended to carry the lawful permanent residence requirement into the second clause, whose phraseology is best explained as a shorthand reference to the requirement of the first clause.

the phrases "dwelling in the United States" or "begins to reside permanently in the United States" found that, at the very least, an alien had to be lawfully admitted to this country before he or she could be considered to be dwelling or residing here permanently. *See Schneider v. U.S. INS*, 65 F. Supp. 377, 379-80 (D. Wash. 1946); *United States ex rel. Goldman v. Tod*, 3 F.2d 836, 838-40 (N.D.N.Y. 1924). Moreover, in *Matter of T-*, 7 I&N Dec. 679 (R.C. 1958), the regional commissioner implied that former section 321 of the Act required lawful permanent residence. *Id.* at 680-81 (stating that "[o]ne of the conditions of section 321 set forth in subsection 5 is that the child must begin to reside permanently in the United States or must have been lawfully admitted to the United States for permanent residence while under the age of 16 years" and finding that the alien in that case "was lawfully admitted to the United States for permanent residence, which accorded her the privilege of residing permanently in the United States as an immigrant"). In *Matter of C-*, 8 I&N Dec. 421, 422 (R.C. 1959), the regional commissioner also stated that "[l]awful permanent residence has always been a prerequisite to derivative citizenship."

Morever, our ruling is not controlled by the statements of the United States Court of Appeals for the Second Circuit in *Ashton v. Gonzales*, 431 F.3d 95 (2d Cir. 2005), which was cited by the Immigration Judge and the respondent. In that case the Second Circuit found that Ashton did not meet the requirements for derivative citizenship under former section 321(a) of the Act because his subjective intent to reside permanently in the United States, coupled with his presence here, was not sufficient to establish that he began to reside permanently in the United States while he was under the age of 18 years. *Id.* at 98. The court went on to express doubts regarding the Government's contentions that section 321(a)(5) required lawful permanent residence but concluded its discussion of this issue by stating that "[u]ltimately, the proper interpretation of INA § 321(a) is a question we need not reach." *Id.* at 99. Therefore the court did not specifically hold that the conditions of section 321(a) can be satisfied by something other than lawful permanent residence.

Even if the Second Circuit had reached this issue, however, its ruling would not be binding on us because the respondent's case arises within the jurisdiction of the Third Circuit, and because *Ashton* did not purport to treat the statute as unambiguous. *See Matter of Anselmo*, 20 I&N Dec. 25 (BIA 1989) (stating that we historically follow the precedent of the circuit in which a case arises); *see also Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967 (2005) (finding that a court's prior judicial construction of a statute trumps an agency construction that is otherwise entitled to

deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, *supra*, only if the prior court decision holds that the construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion).

## V.  CONCLUSION

In conclusion, we find that to satisfy former section 321(a)(5) of the Act and obtain derivative citizenship, an alien must acquire the status of an alien lawfully admitted for permanent residence while he or she is under 18 years of age.  The respondent did not meet this requirement.  He therefore does not qualify for derivative citizenship and appears to be subject to removal proceedings.  Accordingly, the DHS's appeal from the Immigration Judge's decision terminating the proceedings against the respondent will be sustained, and the record will be remanded to the Immigration Judge for completion of removal proceedings.

**ORDER:**  The appeal of the Department of Homeland Security is sustained, the decision of the Immigration Judge is vacated, and the removal proceedings against the respondent are reinstated.

**FURTHER ORDER:**  The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.