## IN THE UNITED STATES COURT OF APPEALS
### FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 24, 2012

No. 09-20764

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

LUIS FERNANDO JUAREZ, also known as Luis Fernandez Juarez

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before REAVLEY, ELROD, and GRAVES, Circuit Judges.

GRAVES, Circuit Judge:

The defendant-appellant (Juarez) appeals the district court's decision on his ineffective assistance of counsel claim. Juarez's counsel failed to independently research and investigate the derivative citizenship defense. Citizenship is a defense to the alienage element of both crimes to which Juarez pled guilty. Juarez claims that his counsel's performance was deficient and prejudicial when counsel advised him to enter guilty pleas without consulting available jurisprudence to make an informed or competent decision. For the following reasons, we REVERSE and REMAND.

No. 09-20764

## Facts and Procedural History

Juarez pled guilty to lying about his U.S. citizenship on a Firearms Transaction Record form which he completed while attempting to purchase a handgun in Houston, Texas in violation of 18 U.S.C. § 911.[1]  He also pled guilty to illegal re-entry into the United States after deportation following a conviction for an aggravated felony in violation of 8 U.S.C. § 1326(a) & (b)(2).  On March 20, 2006, a Federal Public Defender was appointed to represent Juarez but on April 11, 2006, that counsel was replaced by Lazaro J. Izaguirre (Izaguirre).  On May 12, 2006, Juarez pled guilty to the two offenses mentioned above and was sentenced to thirty-six months on the first count and forty-two months on the second count to run concurrently.  On September 20, 2007, Juarez filed a timely *pro se* motion for post conviction relief under 28 U.S.C. § 2255, alleging ineffective assistance of counsel for failing to recognize, investigate, and assert a derivative citizenship defense to the crimes charged.  He also contended that his guilty pleas were unknowing and involuntary because of his counsel's deficient performance.  The magistrate judge then appointed a Federal Public Defender to represent Juarez.  The court held an evidentiary hearing on June 1 and 17, 2009.  Juarez contended that he derived U.S. citizenship through his mother under 8 U.S.C. § 1432(a) (1999), and therefore he had a valid defense to both offenses.  Alienage is an essential element of the crimes to which Juarez pled guilty.  Had he known of the derivative citizenship defense, Juarez argues, he would not have pled guilty.  The magistrate judge recommended that relief be denied on September 15, 2009.  Juarez objected to the magistrate judge's determination.   The district court adopted in full the magistrate judge's recommendation on October 30, 2009.

---

[1] 18 U.S.C. § 911 states: "Whoever falsely and willfully represents himself to be a citizen of the United States shall be fined under this title or imprisoned not more than three years, or both."

No. 09-20764

Juarez was born in Mexico in February, 1983. He entered the United States in 1989 with his mother. Juarez's mother applied for voluntary departure and employment authorization for Juarez on July 3, 1990, and it was approved for the period of March, 1991 to March, 1992. She also applied for Family Union Benefits for Juarez on October 25, 1992, and that request was denied. Juarez's mother also filed an I-130 Petition for Alien Relative on Juarez's behalf, and it was never ruled upon. On June 18, 1999, Juarez's mother became a naturalized U.S. citizen. In December, 1999, Juarez married Misty Jo Quiles, a U.S. citizen. On January 7, 2001, while he was married but still under eighteen years-old, he filed an I-485 (Application to Register Permanent Resident or Adjust Status). Quiles also filed an I-130 petition for Juarez. On August 1, 2002, at the age of eighteen, Juarez was convicted for possession of cocaine and sentenced to ninety-days imprisonment. On September 25, 2002, the Immigration Naturalization Service (INS) issued a final order for Juarez, deporting him to Mexico on October 12, 2002. Juarez lived "permanently" in the United States from 1989-2002. After deportation, Juarez was found present in the United States in April, 2005, when, in an attempt to purchase a firearm, he represented that he was a U.S. citizen.

Juarez claims he first learned the possibility of his derivative U.S. citizenship through his mother's naturalization in August, 2007. Izaguirre, Juarez's trial counsel, knew that Juarez's mother had become a naturalized citizen. But he testified in court that he never knew or heard of the derivative citizenship defense until Juarez filed his § 2255 motion. He also claimed that he did not know that Juarez could be a U.S. citizen as other people did not inform him of this possibility. When asked in court what would he have done had he heard of the derivative citizenship defense earlier, Izaguirre testified that he "would've made a motion to withdraw the [guilty] plea...that we made a mistake. This man is an American citizen."

3

No. 09-20764

## Standard of Review

In reviewing the district court's decision on a motion under 28 U.S.C. § 2255, this court reviews questions of fact for clear error and questions of law *de novo.  United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).  This court reviews a district court's conclusions with regard to a petitioner's § 2255 claim of ineffective assistance of counsel *de novo.  United States v. Molina-Uribe*, 429 F.3d 514, 518 (5th Cir. 2005).

## Discussion

### Ineffective Assistance of Counsel

Had Izaguirre investigated the citizenship issue and advised on the potential defense, Juarez contends, he would not have entered guilty pleas. The district court determined that Juarez had no legal status at the time of his mother's naturalization and could not be considered for derivative citizenship. It also found that Juarez's counsel was not ineffective for failing to raise the derivative citizenship defense because Juarez lacked legal permanent resident (LPR) status in the United States.

*Strickland v. Washington*, 466 U.S. 668 (1984) governs the ineffective assistance of counsel analysis.  First, Juarez must demonstrate that his trial counsel's performance was deficient by showing that it fell below an objective standard of reasonableness.  *Strickland,* 466 U.S. at 687-88.  Juarez must also show that there is a reasonable probability that he was prejudiced by his attorney's unprofessional errors.  *Id*. at 694; *United States v. Green*, 882 F.2d 999, 1002 (5th Cir. 1989).  In the guilty plea context, "'[p]rejudice' occurs if 'there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial.'"  *United States v. Smith*, 844 F.2d 203, 209 (5th Cir. 1988) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)); *see also Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995) (same).  To determine the validity of a guilty plea, the courts must determine

No. 09-20764

"whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Lockhart*, 474 U.S. at 56 (internal quotation marks omitted).

A. *Deficient Performance*

To establish deficiency, Juarez must show that his trial counsel was "not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Nealy v. Cabana*, 764 F.2d 1173, 1177 (5th Cir. 1985). "[T]his circuit has recognized that, at a minimum, counsel has the duty to interview potential witnesses and to make an independent investigation of the facts and circumstances of the case." *Id.* (citing *Bell v. Watkins*, 692 F.2d 999, 1009 (5th Cir. 1982); *Rummel v. Estelle*, 590 F.2d 103, 104 (5th Cir. 1979)). However, the court is "highly deferential" and must apply a strong presumption that counsel's performance was reasonable or "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks omitted). And, the courts must make "every effort...to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *United States v. Fields*, 565 F.3d 290, 294 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689).

Had Juarez been able to establish his derivative citizenship, it would have been a defense to his conviction because citizenship negates the alienage requirement of 8 U.S.C. §§ 911 and 1326. At the time of Juarez's conviction, derivative citizenship claims were governed by 8 U.S.C. § 1432(a) (1999).[2] That provision for derivative citizenship states as follows:

> (a) A child born outside of the United States of alien parents, or of an alien parent and a citizen parent who has subsequently lost citizenship

---

[2] This statute is no longer effective as it was repealed by the Child Citizenship Act (CCA) of 2000. The CCA does not apply retroactively and thus is inapplicable to Juarez. *See Nehme v. I.N.S.*, 252 F.3d 415, 431-32 (5th Cir. 2001).

of the United States, becomes a citizen of the United States upon fulfillment of the following conditions:

(1) The naturalization of both parents; or

(2) The naturalization of the surviving parent if one of the parents is deceased; or

(3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if

(4) Such naturalization takes place while such child is under the age of eighteen years; and

(5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized under clause (1) of this subsection, or the parent naturalized under clause (2) or (3) of this subsection, or *thereafter begins to reside permanently in the United States while under the age of eighteen years.*

8 U.S.C. § 1432(a) (1999) (repealed) (emphasis added).  The parties do not dispute that Juarez satisfies § 1432(a)(2) and (4).  Juarez's father died when Juarez was a child and his mother was naturalized when Juarez was sixteen.

The dispute centers on the interpretation of § 1432(a)(5).  In particular, the disagreement involves the following language: "thereafter begins to reside permanently in the United States while under the age of eighteen years."  Juarez argues that no LPR status was needed and he "beg[an] to reside permanently in the United States while under the age of eighteen years."  At the time Juarez pled guilty, legal authority suggested that he did not need LPR status to become a citizen.  Thus, he argues, the citizenship defense should have been available to him and but for Izaguirre's failure to research and investigate, he would not have pled guilty.

No. 09-20764

No Fifth Circuit case law interpreted § 1432(a)(5) at the time Juarez pled guilty and today we decline to interpret the statute. Based on the legal authority available at the time Izaguirre advised Juarez on his pleas, a derivative citizenship defense was plausible. *See Ashton v. Gonzales,* 431 F.3d 95, 98 (2d Cir. 2005) (court declining to decide what would satisfy § 1432(a)(5) but expressing "belie[f] that there must be some objective official manifestation of the child's permanent residence."); *United States v. Diaz-Guerrero*, 132 F. App'x. 739, 740-41 (9th Cir. 2005) (unpublished) (observing that in the second clause of § 1432(a)(5), Congress omitted the "lawful admission" language that appears in the provision's first clause and simply stated that a minor may gain citizenship if he "thereafter begins to reside permanently in the United States while under the age of eighteen years."); Ira J. Kurzban, Immigration Law Sourcebook 1302 (11th ed. 2008-2009) (advising that "[f]or the child to be eligible based on residency [under §1432(a)(5)], s/he did not need to be an LPR but must have actually resided in the U.S. before s/he was 18").[3]

A reasonable investigation into derivative citizenship would have led Izaguirre to any one of these legal sources. Kurzban's interpretation of the statute reasonably suggests that Juarez may have derived citizenship as he would only need to show actual residence. The *Diaz-Guerrero* court's interpretation that the second clause does not require LPR status also supports Juarez's argument that the defense was available. And *Ashton* interpreted §1432(a)(5) to require "some objective official manifestation" of a child's permanent residence. This interpretation suggests that determination of citizenship involves a factual analysis of available evidence. Juarez submitted

---

[3] The parties cite to Kurzban's 11th edition. The 11th edition of Kurzban's treatise discusses the interpretation of § 1432(a) at the time Juarez entered his guilty pleas in 2006. The treatise cites to *Ashton v. Gonzales*, 431 F.3d 95 (2d Cir. 2005). The 10th edition of Kurzban's treatise also advises that LPR status was not needed under the statute. Ira J. Kurzban, Immigration Law Sourcebook 1077-78 (10th ed. 2006).

evidence in an attempt to show that he actually resided in the United States. His evidence included: (1) a showing that Juarez lived continuously in the United States from 1989 until he was deported in 2002; (2) his mother's application for a voluntary departure and employment authorization for Juarez when he was seven; (3) the filing of the I-130 (Petition for Alien Relative) when Juarez was eleven, to establish a mother/son relationship that was a precursor to filing an I-485 for LPR status; and (4) Juarez's marriage to a U.S. citizen in 1999.

As Juarez's attorney, Izaguirre had a duty to independently research the law and investigate the facts surrounding Juarez's case. *Cabana*, 764 F.2d at 1177-78. With respect to the deficiency prong of the *Strickland* test, '[t]he first prong—constitutional deficiency—is necessarily linked to the practice and expectations of the legal community." *Padilla v. Kentucky*, 130 S. Ct. 1473, 1482 (2010) (citing *Strickland*, 466 U.S. at 688). "We long have recognized that "[p]revailing norms of practice as reflected in American Bar Association standards... are guides to determining what is reasonable..." *Id.* at 1482 (citing various Supreme Court cases). The *Padilla* Court held that although standards such as those from the American Bar Association are "only guides" and not "inexorable commands," these standards can be "valuable measures of the prevailing professional norms of effective representation, especially as these standards have been adapted to deal with the intersection of modern criminal prosecutions and immigration law." *Id*.

Here, Izaguirre, by his own admission, failed to investigate the facts or law necessary to make an informed and competent decision regarding Juarez's citizenship defense. And because "alienage is an element of [the] crime...[the] defendant is entitled to put the government to its proof on the issue of alienage and is *entitled to defend himself by seeking to prove that he was not an alien.*" *United States v. Garcia-Mancha*, 2001 WL 282769, at *8 (N.D. Tex. Mar. 15

2001) (magistrate judge's report and recommendation).[4] Izaguirre never heard of derivative citizenship until after Juarez filed his § 2255 motion. But he knew that Juarez actually resided in the United States after his mother's naturalization and before his eighteenth birthday. Juarez's counsel testified that he just "didn't do the math and figure it out," that derivative citizenship was an available defense against the charges. In admitting his mistake, Izaguirre stated that had he known of the derivative citizenship defense, he would have made a motion to withdraw Juarez's guilty pleas. "[C]ounsel must...ensure that guilty pleas are entered only as an informed and voluntary choice, by actually and substantially assisting the defendant in deciding whether to plead guilty." *Diaz v. Martin*, 718 F.2d 1372, 1378 (5th Cir. 1983) (citations omitted). Izaguirre's failure to investigate was unreasonable.

## B. *Prejudice*

Juarez must also show that his attorney's deficient performance was prejudicial. *Strickland*, 466 U.S. at 694. He must demonstrate that there is a "reasonable probability" that, but for Izaguirre's errors, he "would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Green*, 882 F.2d at 1002. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "The defendant must show more than a mere possibility, but [ ] less than a preponderance of the evidence, that the error affected the trial." *Procter v. Butler*, 831 F.2d 1251, 1255 (5th Cir. 1987) (citation omitted). When the courts assess prejudicial effect, we "'must consider the totality of the evidence

---

[4] The magistrate judge cited *United States v. Ortiz-Lopez*, 24 F.3d 53 (9th Cir. 1994); *United States v. Meza-Soria*, 935 F.2d 166, 168 (9th Cir. 1991) ("If alienage is an element of the crime, it would seem to follow that defendant is entitled to contest the issue by demonstrating that he is not an alien.")

before the judge or jury.'" *Martinez v. Dretke*, 404 F.3d 878, 890 (5th Cir. 2005) (quoting *Strickland*, 466 U.S. at 695).[5]

The district court determined that Juarez was not prejudiced because he could neither show that he obtained LPR status by the time his mother was naturalized nor could he show an "objective official manifestation" of his permanent residency in the United States.[6]  The district court relied on *Ashton v. Gonzales*, 431 F.3d 95 (2d Cir. 2005), which held that a claimant must show "some objective official manifestation" of permanent residency.   431 F.3d at 98. The district court also relied on *Romero-Ruiz v. Mukasey,* 538 F.3d 1057 (9th Cir. 2008), which held that the language "or thereafter begins to reside permanently" changes "only the *timing* of the residence requirement," and "not the requirement of *legal* residence."  *Id.* at 1062.  *Romero-Ruiz*'s interpretation of § 1432(a)(5) was decided in 2008 and was not available at the time Izaguirre consulted Juarez on his guilty pleas.  Other similar interpretations of the statute from the Eleventh Circuit and Board of Immigration Appeals (BIA) also were unavailable when Juarez pled guilty in May 2006.  *See United States v. Forey-Quintero*, 626 F.3d 1323  (11th Cir. 2010); *In re Nwozuzu*, 24 I. & N. Dec. 609 (BIA Sept. 10, 2008).

Although no controlling Fifth Circuit decision was available at the time of Juarez's guilty plea, Juarez's attorney, upon reasonable investigation, would have discovered other reliable legal authority.  *See Ashton,* 431 F.3d at 98; *Diaz-Guerrero*, 132 F. App'x. at 740-41; Ira J. Kurzban, Immigration Law Sourcebook 1077-78 (10th ed. 2006).  The Kurzban treatise and *Diaz-Guerrero* case would have helped guide Izaguirre's legal discussion with Juarez.  The Kurzban

---

[5] The government cited *Lockhart v. Fretwell*, 506 U.S. 364 (1993) at oral argument.  The facts in *Fretwell* are distinguishable from the instant lawsuit and the case does not apply. The applicable standard here is *Strickland*.

[6] D. Ct. Proposed Finding of Fact and Conclusions of Law at 9.

treatise advised that LPR status was not required and that a showing of actual residence was sufficient. *Diaz-Guerrero* held that a minor need not demonstrate legal status to gain derivative citizenship. 132 F. App'x. at 740-41. The case points out that Congress omitted from the second clause of § 1432(a)(5) the LPR language that it included in the first clause. Armed with this legal knowledge, there is a reasonable probability that Juarez would have been dissuaded from pleading guilty. Juarez argues that Izaguirre should have raised the defense regardless of whether he actually derived citizenship because the argument was viable based on available jurisprudence. Indeed, Izaguirre testified to his own mistake and stated that had he independently investigated the defense, he would have withdrawn Jaurez's guilty pleas. *See Mangum*, 67 F.3d at 84 (holding that prejudice determination depends on discovery of evidence that "would have influenced counsel to change his advice regarding the guilty plea.").

Based on the available law and circumstances, Juarez's evidence was sufficient to reasonably challenge the alienage element. *United States v. Guerrero-Pinela*, 1997 WL 759149, at *1 (9th Cir. 1997) (unpublished) (finding error when the district court excluded evidence of defendant's mother's citizenship as the "evidence could have persuaded a juror that reasonable doubt existed as to the alienage element."). *Ashton* bolsters the argument that derivative citizenship was likely fact-determinative because it suggests that LPR status may not be required under §1432(a)(5). *Ashton,* 431 F.3d at 98 ("We believe that there must be some objective official manifestation of the child's permanent residence, but we express no view as to what would satisfy [§1432(a)(5)'s] requirements.").

The record shows that Juarez's counsel simply failed to investigate the law and that Juarez was deprived of the opportunity to assert a viable defense to the charges against him. Jaurez has shown a reasonable probability that, had Izaguirre investigated the available law and circumstances, he would have

elected to go to trial and put the government to the burden of proving the alienage element.  Based on the evidence, a reasonable juror could have found that the government did not prove this element.

A guilty plea is a waiver of certain constitutional rights; thus, a defendant must make it intelligently and voluntarily for it to be effective.  *See Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969).  Juarez's guilty pleas were not entered knowingly or voluntarily because Izaguirre advised him without investigating derivative citizenship.  "[A defendant] who does not receive reasonably effective assistance of counsel in connection with his decision to plead guilty cannot be said to have made that decision either intelligently or voluntarily." *Mason v. Balcom*, 531 F.2d 717, 725 (5th Cir. 1976) (citing *McCarthy v. United States*, 394 U.S. 459 (1969)); *U.S. v. Cavitt*, 550 F.3d 430, 440-41 (5th Cir. 2008) (holding that a lawyer's duty is to provide the client an understanding of the law and to give  competent advice, and that if the lawyer is unfamiliar with the relevant facts and law, the client's guilty plea cannot be knowingly and voluntarily made because it will not represent an informed choice).

## Conclusion

For the foregoing reasons, we REVERSE the district court's decision and REMAND for further proceedings.