# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-60378

EVARISTO GONZALEZ GONZALEZ,

Petitioner,

v.

ERIC H. HOLDER, JR., U.S. ATTORNEY GENERAL,

Respondent.

Petition for Review of an Order of the
Board of Immigration Appeals

Before STEWART, Chief Judge, and WIENER and COSTA, Circuit Judges.

CARL E. STEWART, Chief Judge:

Evaristo Gonzalez Gonzalez petitions for review of a decision by the Board of Immigration Appeals (BIA) affirming the Immigration Judge's (IJ) order that he be removed from the United States. He contends that his removal is improper because he derived citizenship from his father pursuant to former 8 U.S.C. § 1432(a)(5) of the Immigration and Nationality Act (INA).[1] For the reasons stated herein, we DENY his petition.

---

[1] Although § 1432 is now repealed, it governs Gonzalez's derivative citizenship claim because it was the controlling statute when he alleges he satisfied the requirements for derivative citizenship. *Zarzuela v. Holder*, 547 F. App'x 635, 636 (5th Cir. 2013) (per curiam) (unpublished). The statute currently governing derivative citizenship is 8 U.S.C. § 1431. *Id.* (citing *Marquez-Marquez v. Gonzales*, 455 F.3d 548, 550 n.3 (5th Cir. 2006)).

United States Court of Appeals
Fifth Circuit

**FILED**

October 21, 2014

Lyle W. Cayce
Clerk

No. 14-60378

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Gonzalez was born in Veracruz, Mexico but came to the United States in 1992 at the age of seven with his father after his parents divorced. He entered the country without inspection. In 1999, Gonzalez's father became a naturalized U.S. citizen and filed an Immediate Relative visa petition (Form I-130 petition) on behalf of Gonzalez. However, Gonzalez did not become a lawful permanent resident until July 24, 2008 at the age of twenty-three.

### B. Procedural Background

In 2011, Gonzalez pleaded guilty to criminal sexual penetration in the third degree, a felony. Thereafter, the Department of Homeland Security initiated removal proceedings against Gonzalez based on his conviction. Gonzalez argued that removal was not appropriate because he derived U.S. citizenship from his father. Gonzalez sought a continuance to permit his counsel time to receive documentation in support of his citizenship claim. However, the IJ denied the continuance and held that Gonzalez did not derive citizenship from his father because Gonzalez did not become a lawful permanent resident before his eighteenth birthday. The IJ therefore ordered Gonzalez's removal. Gonzalez filed a motion to reconsider, which the IJ denied. Gonzalez timely appealed to the BIA, contesting the continuance denial and the IJ's holding that he did not derive U.S. citizenship.

The BIA affirmed the IJ. Relying on its previous ruling in *Matter of Nwozuzu*, 24 I. & N. Dec. 609 (B.I.A. 2008), the BIA reasoned that Gonzalez did not derive citizenship from his father under § 1432 due to his failure to become a lawful permanent resident before the age of eighteen. Gonzalez also failed to qualify for derivative citizenship under § 1431 because he did not satisfy the lawful permanent resident status requirement. Moreover, the BIA held that the IJ properly denied the continuance motion because Gonzalez did

2

No. 14-60378

not demonstrate good cause supporting an additional grant of continuance. Gonzalez timely petitioned for review of the BIA's order.

On appeal, Gonzalez filed a motion to stay his removal and to transfer his case to the district court in El Paso, Texas, which a panel of this court denied. However, the panel ordered that his appeal be expedited. After this case was scheduled for oral argument, Gonzalez again filed a motion to stay his removal and to transfer his case to the district court in El Paso. This motion was carried with the case.

## STANDARD OF REVIEW

Our jurisdiction to review removal orders under 8 U.S.C. § 1252 is limited. *Marquez-Marquez v. Gonzales*, 455 F.3d 548, 553–54 (5th Cir. 2006). However, we have jurisdiction to review "constitutional claims or questions of law raised upon a petition for review." *Id.* at 554 (internal quotation marks omitted). "In reviewing an appeal from an IJ order, the BIA and this court must resolve all doubts in favor of the United States and against those seeking citizenship." *Ayton v. Holder*, 686 F.3d 331, 335 (5th Cir. 2012) (per curiam) (citation and internal quotation marks omitted). Gonzalez has the burden of demonstrating that he is entitled to naturalization. *Bustamante-Barrera v. Gonzales*, 447 F.3d 388, 394 (5th Cir. 2006). Moreover, "[t]he BIA's determinations as to purely legal questions are reviewed de novo." *Alwan v. Ashcroft*, 388 F.3d 507, 510 (5th Cir. 2004) (emphasis omitted).

## DISCUSSION

Gonzalez's arguments on appeal pertain to the correct interpretation of § 1432. We have yet to address whether § 1432(a)(5) requires an individual to obtain lawful permanent resident status before the age of eighteen to claim derivative citizenship. Three of our sister circuits currently disagree over the proper construction of §1432(a)(5). We will first examine the statutory language and then review the varying approaches taken by our sister circuits.

No. 14-60378

## A. Applicable Law

### a. Section 1432

Section 1432(a) reads, in pertinent part:

(a) A child born outside of the United States of alien parents . . . becomes a citizen of the United States upon fulfillment of the following conditions:

. . . .

(3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents . . .; and if

(4) Such naturalization takes place while such child is under the age of eighteen years; and

(5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized under clause (1) of this subsection, or the parent naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years.[2]

8 U.S.C. §1432(a)(repealed 2000) (current version at 8 U.S.C. § 1431 (2012)).

### b. Ninth Circuit

The Ninth Circuit's first interpretation of § 1432 is in *United States v. Diaz-Guerrero*, 132 F. App'x 739 (9th Cir. 2005) (unpublished). The court interpreted the first clause in § 1432(a)(5) as requiring that minors be "residing in the United States pursuant to a lawful admission for permanent residence;" however, because the second clause did not contain the phrase "lawful admission," the court reasoned that the second clause did not impose a legal status requirement on minors. *Id.* at 740–41 ("If Congress intended to limit derivative citizenship to those with a legal status, it could have plainly stated so."). This conclusion was supported, in the court's view, by the INA's definition of "permanent" and "residence." *Id.* at 741. Moreover, the court

---

[2] For ease of reference, we will refer to the phrases at the center of this dispute as follows: "pursuant to a lawful admission for permanent residence" as "first clause" and "reside permanently" as "second clause."

4

noted that the current statute governing derivative citizenship explicitly makes lawful admission mandatory for derivative citizenship. *Id.* at 740 n.2.

Later, in *Romero-Ruiz v. Mukasey*, the Ninth Circuit interpreted § 1432 as requiring that a minor have lawful permanent resident status before obtaining derivative citizenship. 538 F.3d 1057, 1062 (9th Cir. 2008). The court did not mention its earlier non-precedential opinion—*Diaz-Guerrero*. *Id.* at 1062–63. The court reasoned that "[t]he phrase 'or thereafter begins to reside permanently' alters only the *timing* of the residence requirement, not the requirement of *legal* residence." *Id.* at 1062. To interpret the second clause as not requiring lawful permanent resident status would, in the Ninth Circuit's view, render the first clause superfluous. *Id.*

### c. BIA

In *Matter of Nwozuzu*, the BIA interpreted § 1432(a)(5) as requiring that a minor be a lawful permanent resident before the age of eighteen. 24 I. & N. Dec. 609, 614 (B.I.A. 2008). The BIA first examined the definition of "permanent" in the INA and in *Webster's Dictionary*, which led it to conclude "that something is 'permanent' if it is lasting or is at least intended to last indefinitely." *Id.* at 612. Moreover, "residing permanently," the BIA reasoned, required "the maintenance of a lasting principal dwelling place." *Id.* at 613. If a dwelling place is unauthorized, the BIA concluded, it cannot be permanent. *Id.* ("An alien who entered this country illegally or remains without authorization might maintain a home or residence here, but there is no guarantee that he or she will be able to do so for any length of time."). The BIA acknowledged that the INA's definition of "permanent" stated "that a permanent relationship 'may be dissolved eventually at the instance either of the United States or of the individual, in accordance with law.'" *Id.* at 613 n.4 (quoting 8 U.S.C. §1101(a)(31)). However, the BIA reasoned that the "dissolution" referred to in the definition "is distinct from the termination of

No. 14-60378

an alien's unlawful presence" whereby the individual may be removed at any time. *Id.* Conversely, a lawful permanent resident must "violate[] the law or voluntarily elect[] to abandon the status." *Id.*

Although Congress used different language in the two clauses of § 1432(a)(5), the BIA found it persuasive that "begins to reside permanently" was analogous to the definition of "lawfully admitted for permanent residence." *Id.* at 613 (internal quotation marks omitted).[3]   The BIA considered the similarity to suggest that Congress intended the clauses to have the same definition and concluded that the second clause was simply "a shorthand reference" to the first clause. *Id.* at 613–14 & n.5.  Moreover, the second clause was not rendered superfluous under this interpretation, the BIA reasoned, because it "clarifies that an alien does not have to be a lawful permanent resident at the time his or her parent naturalizes." *Id.* at 614.  To the contrary, interpreting the second clause to not have a lawful permanent residency requirement would negate the first clause because individuals would rarely use that provision to acquire derivative citizenship. *Id.*  The BIA also stated that its interpretation comported with the treatment of derivative citizenship historically. *Id.* at 614–15 (citing *Schneider v. U.S. INS*, 65 F. Supp. 377 (D. Wash. 1946); *United States ex rel. Goldman v. Tod*, 3 F.2d 836 (N.D.N.Y. 1924); *Matter of T-*, 7 I. & N. Dec. 679 (B.I.A. 1958); *In Matter of C-*, 8 I. & N. Dec. 421 (B.I.A. 1959)).

### d. Eleventh Circuit

---

[3] "[L]awfully admitted for permanent residence" is defined in the INA as "the status of having been lawfully accorded the privilege of *residing permanently* in the United States as an immigrant in accordance with the immigration laws, such status not having changed." 8 U.S.C. § 1101(a)(20) (emphasis added).

No. 14-60378

In *United States v. Forey-Quintero*, the Eleventh Circuit found it persuasive that the BIA and Ninth Circuit both interpreted the phrase "reside permanently" in § 1432 to require that the minor be a lawful permanent resident before turning eighteen. 626 F.3d 1323, 1326–27 (11th Cir. 2010). The court reasoned that "reside permanently" had an implicit requirement of lawful residence because "a dwelling place cannot be permanent under the immigration laws if it is unauthorized." *Id.* at 1327 (internal quotation marks omitted). Moreover, if the second clause did not require lawful permanent resident status, then it would render the first clause superfluous. *Id.* Specifically, if lawful permanent resident status was not required, any minor could satisfy the second clause irrespective of whether the first clause was met. *Id.* Such a construction would, in the court's view, "reward only those aliens clever enough to leave the country and return at some later point to begin to reside permanently." *Id.*

### e. Second Circuit

The Second Circuit reached a contrary result from the Ninth and Eleventh Circuits. In *Nwozuzu v. Holder*, the court held that § 1432 does not require a petitioner to have acquired lawful permanent resident status before the age of eighteen to acquire derivative citizenship. 726 F.3d 323, 324 (2d Cir. 2013). The court first examined the statutory text, concluding that "lawful admission for permanent residence" differed from "reside permanently." *Id.* at 327 (emphasis omitted). The court reasoned that because Congress used different language in the two sections, it intended the sections to have different meanings. *Id.* In addition, the court noted that "lawfully admitted for permanent residence is a term of art" defined by the INA, whereas the INA does not define "reside permanently." *Id.* at 327–28 (internal quotation marks and alteration omitted). The court looked at several other INA provisions that used the phrases as if they had distinct meanings. *Id.* at 328 (citing 8 U.S.C.

7

§ 1433(a)(5)(A) (1994) (amended 2000) and 8 U.S.C. § 1438(b)(2) (2012)). Moreover, the Second Circuit had previously interpreted "reside permanently" as only requiring "some lesser official objective manifestation" of residing permanently. *Id.* at 328–29 (citing *Ashton v. Gonzales*, 431 F.3d 95, 99 (2d Cir. 2005)) (internal quotation marks omitted). Ultimately, the court interpreted the first phrase as covering minors with lawful permanent resident status at the time of their parent's naturalization and the second phrase as applying to those minors without such status at the time of their parent's naturalization. *Id.* at 329. In the Second Circuit's view, the BIA's interpretation failed to appreciate that some groups are allowed to remain in the U.S. even though they do not have lawful permanent resident status. *Id.* at 333.

The Second Circuit also examined legislative history, which demonstrated two principles to the court: 1) "the history of the laws governing the derivative naturalization of children demonstrates clearly that Congress intended" the two phrases to have distinct meanings and 2) Congress desired "to preserve the family unit and to keep families intact." *Id.* at 329. The court noted that the earliest statutes governing derivative citizenship did not require lawful permanent resident status. *Id.* at 329–30. Furthermore, Congress later created a "dual framework" for minors living in the U.S. when "their parents were naturalized" and for those who did not reside permanently in the U.S. until later. *Id.* at 331 ("We reasonably conclude from this history that Congress intended the two clauses, which had always used different terms and functioned separately, to continue to have different meanings."). It was only on the former group that Congress imposed the lawful permanent resident status requirement. *Id.* The court also reasoned that because derivative citizenship is automatic, "[r]equiring lawful admission for permanent residence . . . provided an administratively convenient way" to discern those minors who would "remain with their parents." *Id.* Conversely, it would have

been a needless formality to impose that requirement on minors who would have to reside permanently in the U.S. to obtain derivative citizenship and such a requirement could potentially hinder a minor's attempt to receive derivative citizenship. *Id.* at 331–32. The court also reasoned that its interpretation complied with the purpose of the INA—"preservation of the family unit." *Id.* at 332 (internal quotation marks omitted).

### *f. Fifth Circuit*

We previously addressed this statute, albeit in a limited manner, in *United States v. Juarez*, 672 F.3d 381 (5th Cir. 2012). The defendant claimed that his counsel failed to inform him that he could raise a derivative citizenship defense. *Id.* at 385. The defendant claimed that, although he lacked lawful permanent resident status, he resided permanently in the United States before his eighteenth birthday. *Id.* at 387. Although we had not interpreted § 1432 (and declined to do so in that case), we noted that the defendant's claim was plausible based on the state of the law at the time of the defendant's arrest. *Id.* We based this proposition on decisions by the Second and Ninth Circuit as well as secondary sources. *Id.* (citing *Ashton*, 431 F.3d at 95; *Diaz-Guerrero*, 132 F. App'x at 739; Ira J. Kurzban, Immigration Law Sourcebook 1302 (11th ed. 2008–09)). Specifically, we reasoned that "Kurzban's interpretation of the statute reasonably suggests that Juarez may have derived citizenship as he would only need to show actual residence." *Id.*

### B. Analysis

On appeal, Gonzalez argues that the BIA misinterpreted § 1432(a)(5). He contends that we should interpret the second clause as having "a continuing or lasting . . . place of general abode in the U.S., even though it is one that [might] be dissolved eventually at the instance either of the United States or of the individual, in accordance with law." He argues that "permanent" is defined in a manner that does not require that the relationship be "lawful from

inception." Under that interpretation, Gonzalez would meet the requirement in § 1432(a)(5) because he has resided in the United States since 1992. Alternatively, Gonzalez contends that we should adopt the Second Circuit's reasoning in *Nwozuzu*. He satisfies the Second Circuit's interpretation, he argues, because of the I-130 petition filed on his behalf by his father. We decline to decide whether the Second Circuit or the BIA has the correct interpretation of § 1432(a)(5) because Gonzalez does not qualify for derivative citizenship under either interpretation. We also reject Gonzalez's claim that § 1432(a)(5) does not require an individual to be lawfully present in the country.[4]

### a. BIA Interpretation

As Gonzalez concedes, under the BIA's interpretation, he is not entitled to derivative citizenship under § 1432. The BIA interprets § 1432 as requiring that minors have lawful permanent resident status before receiving derivative citizenship. *Matter of Nwozuzu*, 24 I. & N. Dec. at 616. It is undisputed that Gonzalez did not become a lawful permanent resident until the age of twenty-three. Section 1432 requires that a minor satisfy all eligibility requirements before "the age of eighteen years." Because Gonzalez's citizenship claim fails under the BIA's interpretation, we therefore proceed to evaluate his claim under the Second Circuit's interpretation.

### b. Second Circuit Interpretation

The Second Circuit held that the second clause in § 1432 "requires something less than a lawful admission of permanent residency." *Nwozuzu*, 726 F.3d at 328. Gonzalez's argument that he satisfies this test is unavailing.

---

[4] We give "deference to the BIA's interpretation of the INA under the principles of *Chevron USA, Inc. v. NRDC*, 467 U.S. 837 . . . (1984) . . . ." *Nolos v. Holder*, 611 F.3d 279, 281 (5th Cir. 2010) (per curiam). However, we decline to decide whether deference is warranted under *Chevron* in this case because it would not affect the resolution of our decision. *See Ayton*, 686 F.3d at 335 (declining to decide deference issue in regards to the BIA's interpretation of § 1432); *see also Marquez-Marquez*, 455 F.3d at 554 n.12.

Gonzalez did not exhibit "an objective and official manifestation" of an intent to remain in the country. *See id.* at 334. In *Nwozuzu*, the petitioner's father filed an I-130 petition on his behalf, and the petitioner filed an application for adjustment of his legal status before he turned eighteen. *Id.* at 325, 334. The court also noted that Nwozuzu's siblings and parents were naturalized. *Id.* at 334. Conversely, although Gonzalez's father filed an I-130 form on his behalf when he was fourteen, no further action was taken until Gonzalez applied for an adjustment of status at the age of twenty-three. As we have previously noted, an undocumented individual "who has acquired unlawful or illegal status (either by overstaying a visa or illegally crossing the border without admission or parole) *cannot relinquish that illegal status until his application for adjustment of status is approved." United States v. Elrawy*, 448 F.3d 309, 314 (5th Cir. 2006) (emphasis added). Gonzalez failed to take even the initial step of applying for adjustment of status while he was under the age of eighteen. We are not persuaded that he presented "some objective official manifestation of" a permanent residence. *See Nwozuzu*, 726 F.3d at 333 (citation and internal quotation marks omitted).

### c. Gonzalez's Interpretation

Gonzalez also urges his own interpretation of § 1432, which extends the Second Circuit's construction of the statute. He contends that an individual may "reside permanently" as contemplated by the statute although the individual does not have legal status. Rather, the person need only have "protection from being forced to leave at any time." He further argues that a person's entry into the United States need not be lawful at its inception. Under this interpretation, Gonzalez contends that he resided permanently once his father filed an I-130 petition because he could not be required to leave after that point. We are not persuaded.

11

No. 14-60378

It is not readily apparent that the phrase "reside permanently" contains a legality requirement.  The phrase "reside permanently" is not defined in the INA; however, "permanent" is defined as "a relationship of continuing or lasting nature, as distinguished from temporary, but a relationship may be permanent even though it is one that may be dissolved eventually at the instance either of the United States or of the individual, in accordance with law."  8 U.S.C. § 1101(a)(31).  The INA defines "residence" as "the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent."  *Id.* § 1101(a)(33).  Conversely, "lawfully admitted for permanent residence" is defined in the INA as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed."  *Id.* § 1101(a)(20).  "[I]n accordance with law" can be read as only modifying the dissolution of the relationship, not the type of relationship.  *See Ashton*, 431 F.3d at 98 ("Nothing in the definition of § 1101(a)(31) suggests that to be 'permanent,' a 'relationship' must be 'in accordance with law.'").

We need not decide, however, whether "in accordance with law" modifies the entire definition of "permanent" because Gonzalez entered the country illegally and at no time before his eighteenth birthday did he take action to ensure that his presence was lawful.  When construing precursors to § 1432, the Supreme Court has reasoned that an individual must lawfully enter the United States to qualify for derivative citizenship.  *See Kaplan v. Tod*, 267 U.S. 228, 230 (1925) ("The appellant could not lawfully have landed in the United States. . . and until she legally landed 'could not have dwelt within the United States'. . . . Still more clearly she never has begun to reside permanently in the United States. . . ."); *Zartarian v. Billings*, 204 U.S. 170, 175 (1907) (noting that the individual "was debarred from entering the United States . . . and,

12

never having legally landed, of course could not have dwelt within the United States").[5] We acknowledge that the Second Circuit has described these cases as "'unhelpful' in interpreting [§ 1432] of the INA." *Nwozuzu*, 726 F.3d at 330 n.6. However, the Second Circuit ultimately refrained from deciding whether "reside permanently" contains "an implicit 'lawful entry' requirement." *Id.* Moreover, the court reasoned that *Kaplan* and *Zartarian* involved situations where the minor fell within the category of individuals excluded from being admitted into the country. *Id.* The court noted that, in contrast, the petitioner in *Nwozuzu* legally entered the country. *Id.*

We therefore hold that Gonzalez did not reside permanently in the country as contemplated by § 1432 because of his unlawful entry and status until the age of twenty-three. The fact that he has lived in the country since his entry at age seven does not remedy his unlawful entry. Gonzalez's attempt to distinguish *Kaplan* is unavailing. He argues that the individual in *Kaplan* was excluded from entering the country whereas he entered the United States at the age of seven, albeit illegally, and has remained in the country since that time. *See Kaplan*, 267 U.S. at 230. We are not persuaded by his distinction. Similar to the individual in *Kaplan*, Gonzalez was not lawfully permitted to enter the country—a fact Gonzalez concedes. Thus, the Court's analysis would appear to also apply to Gonzalez.

Additionally, *Juarez* is of limited assistance to Gonzalez because in *Juarez*, we refrained from interpreting § 1432(a)(5). *Juarez*, 672 F.3d at 387 ("No Fifth Circuit case law interpreted § 1432(a)(5) at the time Juarez pled guilty and *today we decline to interpret the statute*." (emphasis added)). We

---

[5] These cases inform our interpretation of Section 1432 in light of the "well-settled presumption that Congress understands the state of existing law when it legislates." Bowen v. Massachusetts, 487 U.S. 879, 896 (1988).

merely evaluated the potential viability of a citizenship claim under § 1432(a)(5) for purposes of an ineffective assistance of counsel claim. *Id.*

Because Gonzalez is not entitled to derivative citizenship under § 1432, we also deny his motion to stay and transfer his case. *See Chambers v. Mukasey*, 520 F.3d 445, 451 (5th Cir. 2008) (stating that a stay of removal is warranted if the petitioner proves, *inter alia*, "a likelihood of success on the merits") (internal quotation marks omitted); *see also* 8 U.S.C. § 1252(b)(5)(B) (stating that a transfer is warranted if "the court of appeals finds that a genuine issue of material fact about the petitioner's nationality is presented"). We reiterate that we decline to decide whether the proper interpretation of § 1432 is that of the Ninth and Eleventh Circuits or the Second Circuit because Gonzalez's claim fails under either approach.

## CONCLUSION

For the foregoing reasons, we DENY Gonzalez's petition and DENY his motion to stay and transfer his case.